## In re CLEVELAND DISCOUNT CO.

### (District Court, D. Ohio. May, 1924.)*

1. **Bankruptcy �köö54—Value of improved realty, on issue of insolvency, should not be determined solely on basis of its earning power.**

Value of improved realty, on issue of insolvency, should not be determined solely on basis of its earning power.

2. **Bankruptcy �köö54—Bonds held properly valued at par, instead of market value, on issue of insolvency.**

Unmatured bonds, pledged in trust for payment of collateral trust bonds and backed by ample security, were properly valued at par instead of market value, on issue of insolvency, where bonds were not actually dealt in on stock market and rumors affecting credit of corporation were in circulation.

3. **Bankruptcy �köö76(1)—Note of Delaware corporation, issued in exchange for its stock when capital was impaired, held not to create valid debt.**

Note of Delaware corporation, issued in exchange for its stock when its capital stock was impaired, did not create valid debt, and holder thereof was not creditor, entitled to file intervening petition.

4. **Attorney and client ⊘ööö70—Approval by intervening creditors of acts of their counsel inferred from failure to dissent therefrom.**

Approval by intervening creditors of acts of their counsel in filing and prosecuting intervening petition may be inferred from their failure to dissent therefrom after notice.

5. **Bankruptcy ⊘ööö88(2)—That creditors' attorney furnished security for costs without creditors' approval held not to require dismissal of creditors' petition.**

Action of counsel for intervening creditors in furnishing security for costs without consultation and without creditors' approval *held* not to justify or require dismissal of intervening petition.

6. **Attorney and client ⊘ööö32—Whether counsel may or should furnish security for costs in pending action is matter of ethics, and not of law.**

Whether counsel may or should furnish security for costs in pending action is matter of ethics, and not of law.

*Appeal to Circuit Court of Appeals dismissed on stipulation in December, 1925.

**7. Bankruptcy ⟨⟩54 — Test for determining "insolvency" of corporation.**

Test for determining "insolvency" of corporation is whether assets of corporation on date of appointment of state receivers were in excess of its liabilities, disregarding liability to stockholders, preferred or common.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvency—Insolvent.]

**8. Bankruptcy ⟨⟩54—Stock subscriptions are not liabilities of corporation, for purpose of determining its insolvency in bankruptcy proceedings.**

Stock subscriptions are not liabilities of corporation, for purpose of determining its insolvency in bankruptcy proceedings.

**9. Bankruptcy ⟨⟩91(1)—On issue of insolvency, burden is on intervening creditors to show that value of debtor's assets is less than face.**

On issue of insolvency, burden is on intervening creditors to show that value of debtor's assets is less than face.

**10. Bankruptcy ⟨⟩54—On issue of corporation's insolvency, allowance of deferred discount as asset held justified.**

On issue of corporation's insolvency, master's allowance of deferred discount as asset *held* justified.

**11. Bankruptcy ⟨⟩54—Value of property determined from evidence as of date of alleged act of bankruptcy, and not from subsequent history of property.**

On issue of insolvency, fair reasonable value of alleged bankrupt's property is to be determined from evidence as of date of alleged act of bankruptcy, and not from subsequent history of property.

**12. Bankruptcy ⟨⟩54—In determining insolvency of corporation, subscriptions to its stock by persons to whom corporation was indebted deemed collectible assets.**

In determining insolvency of corporation, subscriptions to its stock by persons to whom corporation is indebted should be regarded as collectible assets, as items may be set off.

**13. Bankruptcy ⟨⟩54—On issue of corporation's insolvency, commissions due bond salesmen should be set off against advances to such salesmen.**

On issue of corporation's insolvency, commissions due bond salesmen should be set off against equal amount of advances made to such salesmen.

**14. Bankruptcy ⟨⟩472—Rule as to apportionment of cost of reference stated.**

On reference to special master in involuntary bankruptcy, portion of master's compensation and taxable costs relating to matters in which alleged bankrupt's position was not sustained by court are taxable against alleged bankrupt, and costs and expenses taxed against petitioning creditors should be in the proportion incurred on trial of issues on which they had burden of proof and failed.

In Bankruptcy. In the matter of the Cleveland Discount Company, alleged bankrupt. On exceptions to special master's report. Report approved.

See, also, 4 Am. Bankr. Rep. (N. S.) 935, 5 F.(2d) 846.

Grossman & Grossman, Calfee, Fogg & White, and Harry H. Rose, all of Cleveland, Ohio (Marc J. Grossman and Pierre A. White, both of Cleveland, Ohio, of counsel), for interveners.

Dustin, McKeehan, Merrick, Arter &· Stewart, of Cleveland, Ohio, for Cleveland Discount Co.

White, Cannon & Spieth, of Cleveland, Ohio (A. V. Cannon, of Cleveland, Ohio, of counsel), for M. B. Daly.

Wesselman & Kraus, of New York City (Bertram L. Kraus, of New York City, of counsel), for Harriman Nat. Bank.

Christopher & Mosier, of Cleveland, Ohio (Harold G. Mosier, of Cleveland, Ohio, of counsel), for Union Discount Co.

Baker, Hostetler & Sidlo, of Cleveland, Ohio (Jos. C. Hostetler, of Cleveland, Ohio, of counsel), for Midland Bank.

WESTENHAVER, District Judge. This is a proceeding to have the Cleveland Discount Company adjudged a bankrupt. The answer denied the commission of an act of bankruptcy. It also sets up as defenses to an adjudication that the petition should be ·dismissed for laches, want of equity, and because petitioners are not creditors, and the proceeding is not being prosecuted by them. Whether an act of bankruptcy is committed depends on whether, on February 22, 1923, the Cleveland Discount Company was insolvent within the definition thereof in the Bankruptcy Act (Comp. St. §§ 9585–9656). After issues joined, on December 11, 1923, a reference was ordered to Hon. P. L. A. Lieghley as a special master, with instructions to hear the evidence, find the facts, and make conclusions of law. The matter is now before me upon his report, filed herein March 4, 1924, and exceptions thereto. I shall consider his report advisory only as to his findings of fact, as well as his conclusions of law; but I cannot overlook the fact that, having seen and heard the witnesses, a certain respect is due to his findings of fact, so far as they depend upon the weight and credibility of the evidence.

[1, 2] The work of the master appears to have been exceptionally well done. He finds upon the main issue that the Cleveland Discount Company was not insolvent, and hence that no act of bankruptcy was committed.

In weighing the evidence, petitioners do not contend that he applied any incorrect rule, except in two instances. One is that he did not adopt the view of petitioners' expert witnesses that improved real estate should be valued according to its earning power. The other is that, in fixing the value of certain bonds, he declined to adopt the market value, as disclosed by stock market sales, but valued the same at par, because the evidence clearly and conclusively showed, in his opinion, that the security back of the bonds was ample. In valuing improved real estate, the master was plainly right. Many elements enter into the intrinsic, as well as the selling, value of real estate, in addition to the present earning power of the improvements thereon. In rejecting the stock market sales of the bonds, the master was also, in my opinion, plainly right, in view of the special facts and circumstances of the case. Many conditions combined to produce a low stock market selling price. The bonds were not dealt in actively, and rumors affecting the credit standing of the Discount Company were in circulation. The bonds in question are pledged in trust for the payment of collateral trust bonds. The mortgage bonds mature in series at dates earlier than the maturity of the market trust bonds. All installments of principal and interest on the mortgage bonds have been promptly paid, and the evidence is clear that the mortgage security is ample. In this situation, particularly in determining a narrow issue of solvency in the bankruptcy sense, the master adopted the correct rule.

There is and was very little dispute about the actual facts. The master's summary of the evidence is not subjected to much, if any, criticism. The differences between him and the petitioners come down chiefly to the inferences drawn by him from admitted facts, or to his acceptance of the opinions of one set of experts as to the value to be placed upon assets, rather than to acceptance of the opinions of another set. It will serve no useful purpose to enter into a discussion of the evidence in detail. It will be sufficient if I specify which findings of fact and conclusions of law I have adopted and approved, with such additional comment only as is needed to indicate the basis upon which my approval rests. At pages 77, 78 the special master sets forth briefly his combined findings of fact and conclusions of law. Of these, Nos. 1, 2, 3, 4, 5, and 6 are adopted in their entirety. No. 7 is adopted, with the modifications hereinafter set forth.

[3] The intervening petitioners, Minch &

Eisenbrey Company and George Huenefeld, who assumed the prosecution of the petition in bankruptcy after the original petitioners withdrew, are creditors in the amounts stated and found. Huenefeld claimed also to be a creditor in the sum of $1,000 upon a gold note issued about January 1, 1922, in exchange for preferred stock of the Discount Company. I concur in the master's finding that this and all other gold notes similarly issued are not debts of the company. The Delaware corporation law, under which such notes were issued, permits the purchase by a corporation of its outstanding shares of stock only when such purchase will not impair its capital stock. The capital stock of the Discount Company was already impaired, and hence, even though the company was amply solvent in the bankruptcy sense, the issue of these gold notes was illegal, and did not create a valid debt against the company. The common-law rule pertaining to the purchase by a corporation of its outstanding shares of stock is even more stringent than the Delaware statute.

[4-6] The special master's findings 2 and 6 are concurred in by me. Counsel's action in filing and prosecuting the intervening petition on behalf of these creditors has been sufficiently adopted and approved by the petitioners, even if counsel's original authority was not broad enough to authorize the same. This approval can be inferred as well from their failure, after knowledge of the filing of the petition, to dissent from action taken in their name, as in any other way. The like action of counsel in furnishing security for costs, even if done without consultation with them and without subsequent approval, does not justify or require a dismissal of the intervening petition. Whether counsel may or should furnish security for costs in a pending action is a matter of ethics, and not of the law. It was so held in United States ex rel. Randolph v. Ross (C. C. A. 6th Cir.) 298 F. 64, 33 A. L. R. 728.

As to whether a bankruptcy court may, upon equitable grounds only, deny adjudication, if petitioners prove an act of bankruptcy and otherwise show themselves entitled to invoke the jurisdiction of the bankruptcy court, is extremely doubtful. The special master's conclusion of law is that this right is a strictly legal one, and cannot be denied, even though the court is of opinion that the best interests of the creditors will be subserved by denying an adjudication. I am disposed to concur in this conclusion. It is certainly true, unless the interests of the creditors seeking an adjudication are so insignifi-

cant in comparison with the interests involved that a court may apply the maxim de minimis non curat lex; and while it is true that the combined debts of the petitioners are only $849.50, and upon this basis the bankruptcy court is asked to draw to itself the administration of many millions of assets, and oust an equitable receivership in progress in a state court, I am not willing to apply the maxim, for the reason that other creditors, unknown as to name, number, or amounts, have remained silent. The cases which have applied against petitioning creditors the doctrine of laches and estoppel to prevent an adjudication have no application to the facts of this case.

The special master expressly says that the equities are with the Discount Company, and should result in a continuance of the receivership in the state court, if the law so permitted, and, further, that "nothing appears in the proof to show that the creditors and stockholders will be benefited by administering the estate in a bankruptcy court." Nor is it suggested that the bankrupt, prior to the appointment of the state receivers, had transferred any of its assets in fraud of its creditors, or had created any preferences which require the aid of a court of bankruptcy to redress. The only two transactions of a questionable nature indulged in by the Discount Company were an attempted settlement with Josiah Kirby, its president, of an indebtedness owing by said Kirby to the company, and the attempted purchase of $1,000,-000 or more of its preferred stock in exchange for gold notes. Both of these transactions were promptly repudiated by the state receivers, and no aid from a bankruptcy court is required. These considerations, coupled with the insignificant amount of intervening petitioners' debts, and the circumstances attending the prosecution of their intervening petition, are not without weight. If no wrongs exist, requiring the aid of a court of bankruptcy in order to secure redress, if the able special master, who gave almost three months' continuous service in a patient inquiry into its financial condition, is of opinion that the interests of creditors and stockholders will be promoted by not interfering with the existing equitable receivership in the state court, then this court can scarcely be expected to look with favorable eye upon petitioners' side of conflicting evidence as to solvency or insolvency.

[7] The meritorious issue is whether or not on February 22, 1923, the date of appointment by the state court of receivers, the Cleveland Discount Company was insolvent in the bankruptcy sense. The test is whether or not the assets of the company, fairly valued as of that date, were in excess of its liabilities, disregarding liability to stockholders, either preferred or common. The special master has correctly apprehended the rules of law by which that issue should be determined and the evidence weighed. He appears to have made full allowance for the crippled condition at that date of the company, and has depreciated adequately the assets so far as that crippled condition required. I approve his ultimate finding of fact that the Discount Company was, in the bankruptcy sense, solvent, even though I should, perhaps, have valued some of the assets differently. I am not prepared, however, to say that any different valuation by me would be sounder than the master's. His valuations as to a few items only are criticized. My comments will be brief and limited to those specially stressed by counsel in oral argument.

[8] The state receivers had made by Haskins & Sells a careful audit. In their report they tabulate the assets and liabilities and find solvency or net worth of the Cleveland Discount Company to be $2,331,847. All parties adopt this report as a point of departure in taking testimony. The master, in his report, also adopts it, and makes his changes and corrections by adding the same as assets or deducting the same as liabilities. The tabulated result of the master's findings of fact is shown at page 69 of his report. The addition on the asset side of $1,255,-210 on account of stock subscriptions is not only right, but was required by the fact that Haskins & Sells had included them the same as a liability. Whatever may be the correct rule as a matter of bookkeeping, the same is not a liability for the purpose of determining solvency in a bankruptcy proceeding. The additions of $37,886 unsecured notes receivable, $77,202 stock owned, $75,-782 accrued interest receivable, are not seriously challenged. I adopt the master's findings with respect thereto without comment. The item of $204,000, increase in value of the Discount Company's holdings in the Kirby Building, is fully supported by the evidence, and has, in fact, been realized by the state receivers.

[9] The addition on the asset side of $500,-000, "Josiah Kirby—Reserve," involves the only finding of fact by the master which I hesitate to approve. Josiah Kirby is apparently indebted to the Cleveland Discount Company in the sum of $1,496,253. He was the general selling agent of its securities, and

this was his debit balance. Prior to the appointment of the receivers, an attempt had been made by him to settle this indebtedness by transferring to the company certain other securities. The receivers repudiated this attempted settlement and have brought suit against him. The special master allows this indebtedness as an asset at its face value, only because no proof was offered by the intervening petitioners tending to show the financial condition of Josiah Kirby. Undoubtedly the law is that the burden of proof to make this showing is on the intervening petitioners, and as a strict technical legal question the master's finding undoubtedly was right. If, however, the question of solvency or insolvency in the bankruptcy sense turned on whether or not this claim was good, and particularly if intervening petitioners were not asserting a strictly technical legal right, or if there were wrongs done to creditors by the Discount Company, which could not be redressed except in a court of bankruptcy, I should deem it my duty to recommit the report to the special master with instructions to hear and receive further and additional evidence with respect thereto and to make new and additional findings in accordance therewith. I am, however, of opinion that the proper handling of this item, even if wholly uncollectible, would not compel a reversal of the master's finding as to solvency. It is undoubtedly in part collectible. Included as liabilities is a credit balance of Kirby with the Discount Company of $110,000. Undoubtedly the two may be set off in any event.

[10] The only other criticized item on the asset side of the addition is $734,041, called "deferred discounts." I approve the master's finding in allowing this amount; in fact, upon the evidence, I think he would have been justified in making a more liberal allowance. The Discount Company's plan of business was this: If it loaned, say, $100,000, it would take back a 7 per cent. mortgage of the face value of $125,000, or it would buy an issue of 7 per cent. mortgages at 80 or 85. It would then place these mortgages in a collateral trust agreement against 6 per cent. trust bonds issued by it, either for $100,000, or for 80 or 85, thus leaving the Discount Company a margin or equity in the pledged collateral of the difference between the money advanced and the face of the bonds, plus the difference in the rate of interest. As already said, the collateral trust bonds were made to mature in series at dates more remote than the maturity of the pledged mortgage bonds. Its method of bookkeep-

ing was to set up the mortgage bonds as an asset at their face value. Haskins & Sells' audit deducted the entire amount thereof, aggregating $1,734,041, notwithstanding a substantial percentage had already accrued.

There is evidence that other mortgage companies followed the same method of bookkeeping as did the Cleveland Discount Company. In any event, the master's action in restoring three-sevenths thereof, his finding as to a fair value of the earned and accrued discount, was right and proper, particularly in view of the fact that neither such mortgage bonds nor the collateral trust bonds for which the same are pledged, are now due and payable; nor can such trusts be now terminated or liquidated, nor is any evidence produced tending to show that the mortgage bonds are not amply secured. Had the master made a larger restoration on account of this item, it would not have been subject to criticism.

The item of $500,000, David Holding Company, is justified by the evidence. This asset consists of vacant building land in one of the most desirable residential districts of the city. The evidence is ample that the purchase price was low, and that the value had increased at least this amount, if not more, since the date of purchase.

Coming to the master's deductions, the first item is $673,500, Cleveland Discount Building. It is the claim of intervening petitioners that this deduction should have been larger. Upon the evidence, the master found the fair value of this building to be $4,250,000, and the criticism is as to this valuation. The master's finding is approved. In my opinion, a finding of a value of $4,500,000 should not be disturbed.

[11] Upon the evidence, the master's deductions on account of the North Shaker Boulevard Company, Gordon Square property, and Akron holdings are fully justified. The valuation of the Gordon Square property is criticized mainly because of its limited earning power. My views thereon have already been stated. The criticism of the valuations of the North Shaker Boulevard Company and of the Akron holdings is based largely upon the subsequent history of these properties. This is not the test. The fair reasonable value thereof, to be determined by evidence, as are other questions of fact, at the date of the alleged act of bankruptcy, is the true test. This is the one adopted by the master, with sufficient allowance for the depreciation due to the bankrupt's then crippled condition. I am familiar with too many cases in which property fairly and

reasonably worth, by all the known tests, twice the debts thereon, has failed to realize enough to pay creditors, to be much impressed by these considerations. The master has weighed the evidence carefully pertaining to each of these items and I approve his findings.

[12, 13] As to the Sharon Pressed Steel Company $300,000 item, I likewise concur in his finding. His deductions on account of stock subscriptions and deferred commissions due salesmen I think upon the evidence are excessive. Certainly, such part of the stock subscriptions as are made by persons to whom the company owes money paid in installments on bond purchases is collectible. One item may be set off against the other. This aggregates some $200,000. I think it should be added. Likewise as to commissions due salesmen. The master has assumed that what the salesmen owed the Discount Company is uncollectible, but that what the Discount Company owed the salesmen must be paid. To the extent to which the debts are mutual, what the salesmen owed is collectible, and the obligation to them may be extinguished by way of set-off. An exact audit and balancing of the cross-obligations was not made, but it is fair to assume that they would average. Hence, in my opinion, the master has erred against the Discount Company to a very substantial amount in these items. It is unnecessary to deal in exact figures.

In addition thereto, counsel for intervening creditors, resisting adjudication in bankruptcy, call attention to alleged duplications in deductions in the reports of Haskins & Sells and of the special master because of deferred discounts. It is claimed that items of $112,981.65 on the Gordon Square property, $148,725.50 on account of the Akron holdings, $281,864.03 on the Cleveland Discount Building, and $188,813.61 on account of the North Shaker Boulevard property have been deducted twice. It is plain that these several items, aggregating $732,-384.79, were deducted with the deferred discounts. It is further claimed that these several items were included in the special master's report only at their fair valuation, again eliminating deferred discounts included in the company's bond holding against these several properties. No exceptions to the master's findings were taken on this ground. It appears to me that this contention is true only in part, since the special master restored deferred discounts to the extent of $734,041. It is unnecessary to make an exact calculation.

[14] Coming to the special master's finding and conclusion No. 7, I am of opinion that the costs should be equitably apportioned, but that the apportionment recommended by the special master is not equitable. The Cleveland Discount Company should pay all the taxable costs, including the special master's compensation and stenographic charges for the several hearings and reports of Special Master C. D. Friebolin. It was wrong in its attitude in all these matters, and was so found by the master and by this court. It should likewise pay such proportion of Special Master Lieghley's compensation and of the stenographic charges in the hearings before him as are properly assignable to the issues raised by its answer pertaining to the first, second, third, and sixth findings of the special master.

The great bulk of the cost and expense of this last reference was incurred in trying the issues tendered by the intervening petition, as to whether an act of bankruptcy had been committed and whether the Cleveland Discount Company was or was not solvent. Upon this issue, the petitioners had the burden of proof, and, having failed, should pay the costs. The master's finding that the agents of the Discount Company have since February 22, 1923, "staged a situation which was naturally and reasonably calculated to invite this prosecution," is not a sufficient justification in equity for imposing any part of the costs upon the prevailing party. It must always be assumed that a plaintiff believes he has a right of action, or he would not bring a suit. In this aspect the case is not distinguishable from any other action, and the costs should go with the judgment or decree. I have requested the special master to calculate the amount fairly to be assigned to the Discount Company in conformity to these views.

My conclusion is that the intervening petitioners have not sustained the allegations of their petition, and it must be dismissed. An order in conformity herewith may be prepared and presented. This is not to say that a liquidation of the Discount Company's assets will produce anything for stockholders, or even that it would pay all of its debts in full. In that view, the result may be the same as in many other piecemeal or forced liquidations; but, applying the tests of the bankruptcy law as to whether or not an act of bankruptcy was committed, or whether the Cleveland Discount Company was insolvent, in the bankruptcy sense, as of February 22, 1923, I approve and concur in the finding of the special master that an act of bankruptcy or insolvency has not been shown.