## HUTCHINSON v. FIDELITY INV. ASS'N.
### No. 4490.

Circuit Court of Appeals, Fourth Circuit.

Aug. 28, 1939.

Edward Lamb, of Toledo, Ohio (Lowell Goerlich, of Toledo, Ohio, on the brief), for appellant.

Tom B. Foulk and Austin V. Wood, both of Wheeling, W. Va. (Koontz & Koontz, of Charleston, W. Va., and James G. McClure, of Wheeling, W. Va., on the brief), for appellee.

Chester T. Lane and John T. Callahan, both of Washington, D. C., Edward C. Jaegerman, of New York City, and Homer Kripke, of Washington, D. C., for Securities Exchange Commission, amici curiæ.

Before PARKER and NORTHCOTT, Circuit Judges, and H. H. WATKINS, District Judge.

PARKER, Circuit Judge.

This is a suit in equity brought in the District Court of the United States for the Northern District of West Virginia, at Wheeling, on December 19, 1938, by Robert F. McCammon and other contract holders, against the Fidelity Investment Association, a West Virginia corporation, engaged in the selling of investment contracts and operating under a license issued by the Insurance Commissioner of West Virginia pursuant to Article 9 of Chapter 33 of the West Virginia Code. The object of the suit was to secure the appointment of a receiver for the Association and have it liquidated. The complaint alleged that a civil action had been instituted against the Association, in the District Court of the United States for the Eastern District of Michigan, setting forth that its contracts were being improperly sold and asking that it be enjoined from engaging in certain alleged unfair practices, and further alleged that because of this suit the plaintiffs and others holding contracts of the Association would suffer great loss unless the company were liquidated through a receivership.

The appellant, Alice P. Hutchinson, on December 23, 1938, moved the court for leave to intervene in the suit as a defendant and filed an answer alleging that she was the holder of one of the contracts of the Association known as a Special Annuity Contract. The value of her contract was less than $3,000.00. She prayed that the appointment of a receiver for the Association be denied and the suit dismissed. Her answer further prayed that the court declare her rights and the rights of others holding similar contracts. There were a number of other intervenors but they have not appealed from the decree of the court below.

The Association filed its answer to the complaint, as well as to the intervening answer of appellant, denying all pertinent allegations as to the misconduct of its business, and moved for judgment on the pleadings. The court below overruled this motion but denied the motion for a receiver until a further hearing could be had. A stipulation was entered into between the attorneys representing all the parties then in court, including the appellant, that counsel with the aid of auditors and experts, should make an examination of the affairs of the Association and report their findings to the court. To this the trial judge agreed and entered an order appointing a Special Master to preside at the conferences to be held pursuant to the stipulation.

Hearings were immediately had and on January 26, 1939, the Special Master filed his report, which was signed also by representatives of all the parties to the suit except the attorneys representing appellant.

The Special Master reported, among other things, that the conferences were participated in by representatives of the regulatory bodies of various states in which the Association was operating including the States of Wisconsin, Ohio, Virginia, Indiana, and West Virginia; that a number of the officers of the As-

sociation and experts, as well as the auditor of the State of West Virginia, who had supervisory powers over the Association as ex-officio Insurance Commissioner, had been examined; that the Association had approximately one hundred thousand (100,000) contracts on which the liability, at the time of the institution of this suit, was in excess of thirty-four million dollars ($34,000,000); that the assets of the Association, measured by the sound value basis, were greater than its liabilities and that therefore the Association was solvent, and that the laws of the State of West Virginia, as to the deposit of securities, had been complied with. The report recommended that the application for the appointment of a receiver be denied.

Exceptions to the report of the Special Master were filed on behalf of appellant, all other parties to the suit having concurred in the report. On January 31, 1939, the judge below filed an opinion holding, among other things, that the "sound value" basis adopted by the Special Master in computing the value of the Association's assets was a proper basis to be used in determining the solvency of the Association. He then entered an order overruling the exceptions to the report of the Special Master, confirming the report in all respects, both as to findings of fact and conclusions of law, and dismissing the suit. The appellant excepted to the entry of the final judgment and brought this appeal.

The civil action brought in the Michigan court was terminated on December 22, 1938, by the entry of a consent judgment and we are of the opinion that that proceeding has no bearing upon the issues here.

The points raised by appellant's exceptions to the report of the special master are three in number and are as follows: (1) That there was "failure to outline the facts behind the trust or contractual relationship which the Fidelity Investment Association has with its contract holders"; (2) that there was failure to disclose the extent of the demands made for the withdrawal of cash surrender and loan value; and (3) that the so-called West Virginia or "sound value" theory of appraisal was used in valuing securities instead of market value. The exceptions entered to the judgment of the District Court properly raise no other questions except one relating to the validity of the judgment itself, i. e. whether judgment dismissing the complaint could be entered without prior notice to each of the contract holders of the association. We shall consider each of these in the order named.

▇ We see no basis for the contention that there was failure to outline the facts behind the trust or contractual relationship which the association sustains towards the contract holders. On the contrary, the report sets forth an analysis of each type of contract issued by the association, shows a segregation of funds applicable to contracts of that type and gives the status of each fund showing assets and liabilities, with "sound" value, book value and market value of assets, and with a showing of the amount of the actuarial reserve required to meet outstanding contracts in excess of cash liability thereon. The report further shows that transactions between funds which had been subject to criticism had been discontinued; that on the basis of "sound" value each of the funds was solvent, with the exception of two of the older funds which had gone through the depression; and that, with respect to these two, the value of assets in the general fund in excess of liabilities was ample to take care of their deficits. If it be assumed, as appellant contends, that the association sustains a trust relationship towards its contract holders with respect to the securities held in each of these funds, there is nothing in the record before us which would justify the court in taking these assets out of the hands of the association and appointing another trustee to handle them; and there is no reason for the court to make a declaration of such trust relationship in the absence of some affirmative action to be taken with regard thereto, as certainly the court should not prolong litigation over a receivership, with its ever-present threat to solvency, merely for the purpose of entering a declaratory judgment. If any party really desires a declaratory judgment, he should seek it in regular course, and not in connection with litigation fraught with so much danger to the association as is a suit for the appointment of a receiver.

▇ The second point is that the report of the special master does not disclose the extent to which demand has been made for the withdrawal of cash surrender and loan

values of contracts. The report does show, however, that the matter was fully dealt with; that the auditor of the State of West Virginia had entered an order temporarily prohibiting the association from making payments or loans to contract holders; and that checks were being prepared which would promptly go forward to contract holders upon the revocation of the order. Even if these demands should amount to $4,000,000, as contended by appellant, we find nothing in the record to justify a holding that the association will be unable to meet such demands from the resources properly available to it for that purpose.

On the third point the report in addition to showing book value and market value of securities held by the association shows also a "sound" value, upon which the question of solvency was ascertained. This "sound" value was defined in a formula prescribed by the auditor of the State of West Virginia for the association and was approved by the special master and by the Judge below, as well as by counsel for all parties to the litigation other than counsel for appellant. That formula is as follows:

"1. Bonds and debentures that are not now in default of their interest or principal, and that have continued to pay interest, should be valued at par.

"2. All preferred and common stocks should be valued at the market.

"3. All mortgages, real estate and secured notes should be carried at book value until such time as an appraisal or offer for sale indicates the value to be less, at which time the value for each should be changed to the lesser figure.

"4. All securities that are actually in default of principal or interest, or that have paid principal or interest in the past three years by the sale of additional securities or solely by means of borrowing money for this purpose, without having earnings·equal to the amount to offset the loan, should be carried at current market prices."

We cannot say that the use of this formula is wrong either as a matter of law or as a matter of fact. Appellant contends that all securities should be valued at market value in determining solvency; but it is clear that this is not a fair test of solvency for such institutions as insurance companies and corporations like the association here, whose obligations mature over a long period of time and whose investments in securities are made with a view of holding and collecting and not selling on the market. The solvency of such an institution does not in fact fluctuate with the market because of the fluctuation of securities in which it has made long term investments; and solvency should not be determined on the market value of such securities. The special master gave consideration to the rule applied by life insurance companies (Best's Life Insurance Reports, 1938-1939 Ed., p. IV) and to that applied by the Comptroller of the Currency and the Federal Reserve Board, (Fitch Bond Record, January 10, 1939, pp. 1 and 2) and found that the formula adopted by the auditor of West Virginia as above quoted conformed to these rules with such modifications therein as were necessary to apply them to the association's business. The report states:

"The above rules applied since 1931 by Insurance Commissioners, and since 1933 by the Comptroller of Currency, the Federal Reserve Board and the Federal Deposit Insurance Corporation, indicate that the only fair method of valuation of the security portfolios of the Fidelity Investment Association are upon a similar method—modified, of course, to apply to the character of the Association's business.

\* \* \* \* \* \*

"Inasmuch as Fidelity Investment Association is a corporation created under the laws of the State of West Virginia and as such is under the supervision and direction of the auditor and ex-officio insurance commissioner of the State of West Virginia, your conferees were agreed that the formula heretofore set forth should be followed in this proceeding in regard to the determination of the sound value of the bonds and other securities held by the Fidelity Investment Association."

The portion of the formula particularly attacked is the first paragraph relating to bonds and debentures not in default, which are to be valued at par. In the absence of something to indicate that they could not be collected at par, we do not see why this is not a fair method of valuation, as such securities are held, not for sale on the market, but for long term investment and collection at maturity. Certainly, there was no reason why the court in determining the solvency of the association should value them at the market, which is the only basis suggested by appellant. A similar question was before the late Judge Westenhaver in Re Cleveland Discount Co., D.C., 9 F.2d 97, 99. In answering the contention that

certain bonds should be valued at the market in determining the solvency of an investment company, that learned and able judge said: "In rejecting the stock market sales of the bonds, the master was also, in my opinion, plainly right, in view of the special facts and circumstances of the case. Many conditions combine to produce a low stock market selling price. The bonds were not dealt in actively, and rumors affecting the credit standing of the Discount Company were in circulation. The bonds in question are pledged in trust for the payment of collateral trust bonds. The mortgage bonds mature in series at dates earlier than the maturity of the market trust bonds. All installments of principal and interest on the mortgage bonds have been promptly paid, and the evidence is clear that the mortgage security is ample. In this situation, particularly in determining a narrow issue of solvency in the bankruptcy sense, the master adopted the correct rule."

To have applied the bankruptcy test of solvency under the circumstances here disclosed and to have valued at market value the securities which the association did not expect to sell on the market but to collect upon maturity, could not have been justified; and certainly, where counsel for plaintiff and all other interested parties except appellant joined in the report showing solvency and asked that the suit for receivership be dismissed, the court would not have been justified in appointing a receiver upon the request of a single creditor who could collect the cash surrender value of her contract at any time and who stood to lose, at the most, only a few hundred dollars of profits, as against millions of dollars of investment that would be lost by other contract holders if the association should be wrecked by a receivership. It should not be forgotten that the appointment of a receiver is not a matter of right, but one resting in the sound discretion of the court. Pennsylvania v. Williams, 294 U.S. 176, 182, 55 S.Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166.

The fourth point, viz., that a judgment dismissing the complaint could not be entered without notice to all of the contract holders of the association, rests upon a fundamental misconception of the meaning of rule 23(c) of the new Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The notice therein provided for is required in case of voluntary dismissal or compromise of a class action, so as to limit the power of the named plaintiff to terminate the suit which he has brought for others as well as for himself. It was never intended, of course, that such notice should be a condition precedent to dismissal by the court after hearing on the merits. See Moore Federal Practice, vol. 2, p. 2277 et seq.

The briefs discuss all sorts of questions not raised in the court below, but we need not consider them. The rule is well settled that only in exceptional cases will questions, of whatever nature, not raised and properly preserved for review in the trial court, be noticed on appeal. 4 C.J.S., Appeal and Error, § 228, page 430; Blair v. Oesterlein Machine Co., 275 U.S. 220, 225, 48 S.Ct. 87, 72 L.Ed. 249; McCandless v. Furlaud, 293 U.S. 67, 55 S.Ct. 42, 79 L.Ed. 202; H. E. Wolfe Const. Co. v. Fersner, 4 Cir., 58 F.2d 27, 28, 29; Potts v. City of Utica, 2 Cir., 86 F.2d 616, 619; Marion Steam Shovel Co. v. Bertino, 8 Cir., 82 F.2d 945; New York Life Ins. Co. v. Doerksen, 10 Cir., 75 F.2d 96, 101. This salutary rule is of special importance in a case of this kind, where grave injustice might well result from the consideration by this court of an apparent irregularity which could have been entirely cleared up if a question regarding it had been raised while the proofs were being taken. An appellate court, in the nature of things, cannot assume the functions of a special master and roam at large over the record, and any attempt on its part to do so would probably do a great deal more harm than good. Especially is this true of a case involving application for a receivership where the mere prolonging of the litigation may prove disastrous. Counsel should have raised before the court below all points which they wished considered.

The answer filed by appellant upon her intervention prayed that the appointment of a receiver for the association be denied and the suit dismissed. While her answer did contain a prayer to the effect that the association be ordered to perform its contract with her and all other holders similarly situated and that the court declare her rights under the contract, a careful reading of the answer will disclose that there are no allegations appropriate to the establishment of a trust in the funds of the association and such general allegations as are made as to interest in the association's funds were manifestly put forward merely as a basis for intervention to oppose the

receivership asked by plaintiffs. In the dismissal of the bill asking appointment of a receiver, appellant has obtained the relief for which she prayed, and the only relief which the allegations of her answer justified, and is in no position to complain further. We have examined the exceptions which she urged before the District Judge, however; and, as above indicated, we find them without merit.

Affirmed.