Lavada Marlow DAUGHERTY,
Plaintiff,

v.

Lucille BALL, Edwin E. Holly, W. Argyle
Nelson, Sr., Curtis H. Palmer, Oscar
Katz and Desilu Productions, Inc., De-
fendants.

No. 65–1486.

United States District Court
C. D. California.

Oct. 31, 1967.

Paul Kallman, Beverly Hills, Cal., and
Sidney B. Silverman, New York City by
Paul Kallman, Beverly Hills, Cal., for
plaintiff.

Milton A. Rudin, Los Angeles, by Peter
C. Bennett, Hollywood, Cal., for defend-
ants.

DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW and
ORDER OF DISMISSAL ON
MERITS

HAUK, District Judge.

This action was initiated derivatively
on behalf of Desilu Productions, Inc.,
hereinafter referred to as "Desilu", in
a complaint alleging that the individual
defendants, as officers and directors of
defendant Desilu, approved, permitted to
be paid, and paid excessive compensation
to defendant Lucille Ball during the years
1963 through 1965.

Jurisdiction of this court has been in-
voked pursuant to 28 U.S.C. § 1332, as
amended,[1] inasmuch as there is diversity
of citizenship between plaintiff and de-
fendants and the matter in controversy

1. "§ 1332. *Diversity of citizenship;
amount of controversy; costs.*
"(a) The district courts shall have
original jurisdiction of all civil actions

where the matter in controversy exceeds
the sum or value of $10,000, exclusive of
interest and costs, and is between—
"(1) citizens of different States."

exceeds the sum of $10,000, exclusive of interest and costs.

In the course of the pretrial proceedings, jurisdiction was stipulated and the following facts were admitted [2] and the Court now finds them to be true:

A. Plaintiff is a citizen of New York. Plaintiff owns 50 shares of common stock of defendant Desilu which have been owned continuously since at least October 11, 1961, which shares are registered in plaintiff's maiden name, Lavada Marlow.

B. The individual defendants have been directors of defendant Desilu during the periods listed:

| Name | Period |
| --- | --- |
| Lucille Ball | 1950 to date |
| Edwin E. Holly | 1957 to date |
| W. Argyle Nelson, Sr. | 1960 to January, 1967 |
| Curtis H. Palmer | 1963 to date |
| Oscar Katz | 1964 to March, 1966 |

---

The individual defendants are citizens of the State of California and reside in the Central District thereof.

Defendant Desilu is a corporation of the State of California having its principal place of business in California and particularly in the Central District thereof.

C. Defendant Ball was elected President of Desilu on November 7, 1962, and has been reelected each year thereafter. For several years prior to November 7, 1962, defendant Ball served as Vice President of Desilu.

D. Defendant Desilu is engaged in the production of filming of television motion pictures and commercials. In addition, Desilu owns studio lots, sound stages and other facilities necessary for the production of television and other motion pictures and commercials. The facilities of Desilu are employed by Desilu in connection with its own productions and are also leased to others.

E. Defendant Lucille Ball at all times relevant to this proceeding has owned between approximately 49.09% and 52.02% of the issued and outstanding common stock of Desilu. Since December 1958, and prior to November 7, 1962, approximately 52% of the issues and outstanding common stock of Desilu (including Class B Common Stock) was held jointly by defendant Lucille Ball and Desi Arnaz. Defendant Lucille Ball purchased the stock owned by Desi Arnaz on or about November 7, 1962, and thus became sole owner of 51.96% of the issued and outstanding common stock of Desilu, including Class B common stock.

F. All of the Class B common stock of Desilu is and has been owned by Lucille Ball since November 7, 1962. Of the issued and outstanding common stock of Desilu owned by defendant Lucille Ball since that date, 5.83% thereof is ordinary common stock and 94.17% is Class B common stock. No dividends may be declared or paid on Class B common stock unless a dividend of at least equal amount has been declared and paid on ordinary common stock.

G. Cash dividends have been declared and paid on the ordinary common stock of Desilu during the fiscal years ending in 1959, 1960 and 1961 of 30¢, 60¢ and 45¢ per share respectively. No dividends have ever been declared or paid on Class B common stock of Desilu.

2. *Pretrial Conference Order*, May 8, 1967, pp. 2–8.

H. Defendant Lucille Ball has rendered her exclusive services to Desilu in an executive capacity at all times relevant to this proceeding. She served as Vice President and Director until November 2, 1962 and as President and Chairman of the Board of Directors since November 3, 1962.

Defendant Lucille Ball has earned the following compensation for her services as an executive, in the capacity indicated, for the fiscal year indicated.

| Fiscal Year Ending | Capacity | Amount |
|---|---|---|
| May 2, 1959 | Vice President | $ 25,000 |
| April 30, 1960 | Vice President | 25,000 |
| April 29, 1961 | Vice President | 25,000 |
| April 28, 1962 | Vice President | 25,000 |
| April 27, 1963: | | |
| (a) April 29, 1962 thru November 2, 1962 | Vice President | 16,743 |
| (b) November 3, 1962 thru fiscal year ending April 27, 1963 | President | 55,564 |
| May 2, 1964 | President | 127,404 (computed on basis of 53 payroll weeks) |
| May 1, 1965 | President | 100,000 |

---

I. Desi Arnaz was President of Desilu prior to the election of defendant Ball to that office. Compensation of Desi Arnaz was as follows for the fiscal years indicated:

| Fiscal Year Ending | Capacity | Amount |
|---|---|---|
| May 2, 1959 | President | $ 75,000 |
| April 30, 1960 | President | 75,000 |
| April 29, 1961 | President | 125,000 |
| April 28, 1962 | President | 150,000 |
| April 27, 1963: April 29, 1962 thru November 2, 1962 (when resigned) | President | 94,436 |

---

J. At all times relevant to this lawsuit, defendant Lucille Ball rendered her services exclusively to Desilu as a television performer, with the exception of certain so-called "guest appearances".

For rendering such services to and for Desilu, defendant Ball earned and received cash compensation and earned but has not received certain deferred compensation, which deferred compensation is to be paid in the manner indicated below.

Defendant Ball's compensation for her artistic services as a television performer, for the indicated fiscal year was as follows:

| Fiscal Year Ending | Cash Compensation: Amount Received and Source | Deferred Compensation |
|---|---|---|
| April 27, 1963 | $150,000 THE LUCY SHOW (30 episodes) | $300,000 |
| | $ 2,750 Other Shows | |
| May 2, 1964 | $140,000 THE LUCY SHOW (28 episodes) | 280,000 |
| | $ 37,885 Other Shows | |
| May 1, 1965 | $130,000 THE LUCY SHOW (26 episodes) | $260,000 |
| | $ 172 Other Shows | |

The deferred compensation referred to above represents $10,000 per episode of THE LUCY SHOW and is in full payment of all rerun, residual and other payments or participations to which defendant Ball would otherwise be entitled pursuant to any applicable collective bargaining and other agreements on account of any rerun, reissue or other use of any episode of THE LUCY SHOW. These deferrals are to be paid by Desilu to defendant Ball in 84 equal monthly installments commencing in May of the year following the termination of the Agreement pursuant to which defendant Ball renders her services to Desilu in connection with THE LUCY SHOW.

K. The total cash compensation of defendant Ball, from Desilu, for all of her services rendered has averaged approximately $253,000 per year over the past three fiscal years of defendant Desilu. Defendant Ball's deferred compensation has averaged approximately $280,000 per year over the past three years of defendant Desilu, which is payable in the manner stated above.

L. THE LUCY SHOW is generally considered one of the most successful in the history of television. It is generally rated by the acceptable rating services among the top ten shows.

M. Defendant Ball has appeared as a guest artist on television shows or television series of other persons. Although she could command higher compensation for such appearances, she has appeared on the following shows, among others, for the following compensation in the last several years:

| SHOW | YEAR | AMOUNT |
|---|---|---|
| THE DANNY KAYE SHOW | 1964 | $ 500.00 |
| THE JACK BENNY SHOW | 1964 | 350.00 |
| THE ART LINKLETTER SHOW | 1965 | 204.60 |
| THE DANNY THOMAS SPECIAL | 1965 | 1,000.00 |
| THE DEAN MARTIN SHOW | 1966 | 1,000.00 |

In exchange for this, the star performers of the shows on which defendant Ball has rendered her services appear on segments of THE LUCY SHOW

for approximately the same compensation for which defendant Ball appeared on their respective shows, although they, too, could command higher prices.

N. Defendant Ball has rendered other guest appearances including in 1962 an appearance on a CBS program entitled THE GOOD YEARS for $100,000 and on THE DANNY KAYE SHOW in 1963 for $100,000.

O. As part of the agreement of defendant Desilu with Columbia Broadcasting System, Inc. (called "CBS") to deliver THE LUCY SHOW, CBS has provided Desilu with sums of money to enable Desilu to develop and produce television pilot shows. A television pilot is a single episode of a proposed series based upon which the network or advertising agency will decide whether it wishes to purchase and pay for an entire series.

CBS has advanced or will advance the following sums during the following fiscal years:

| Fiscal Year Ending | Amount |
| --- | --- |
| May 2, 1964 | $200,000 |
| May 1, 1965 | $350,000 |
| April 30, 1966 | $700,000 |

P. The compensation of defendant Ball for her artistic services (see particularly Paragraphs J and K above), is not excessive and plaintiff has withdrawn her contentions to the contrary.

As a result of the foregoing admissions and findings, the issues of fact were reduced to two:[3]

A. Was defendant Ball's executive salary excessive in any of the fiscal years ending April 27, 1963, May 2, 1964, or May 1, 1965?

B. Was any part of the compensation for services rendered by Ball as President granted retroactively?

It should be noted that the issues were limited to Miss Ball's *executive* salary, as Vice President and President of Desilu, since counsel had agreed to delete the issue of her *talent* compensation as an actress from the case.

Subsequent to the Pretrial Conference Order, a series of events occurred which have become and are material to the disposition of this action. The Court, upon undisputed showing by the parties, finds the following additional facts to be true:

1. At a Special Meeting of the shareholders of Desilu held at 780 North Gower Street, Hollywood, California, at 11 o'clock a.m. on July 17, 1967, shareholders representing in excess of two-thirds of total outstanding shares of both classes of voting stock of the corporation approved an Agreement and Plan of Reorganization.

2. Pursuant to said Agreement and Plan of Reorganization approved by the shareholders of Desilu, substantially all of the assets of Desilu, including all claims, were transferred to Ball Productions, Inc., a Delaware corporation, which assumed all of Desilu's obligations and liabilities, subject to certain exceptions not material hereto.

3. On or about July 25, 1967, all of the stock of Ball Productions, Inc., was transferred to Gulf and Western Industries, Inc., hereinafter referred to as "G & W", in exchange for a predetermined number of shares of two classes of voting preferred stock of G & W.

4. Ball Productions, Inc. was thereupon merged into Paramount Pictures Corporation, hereinafter referred to as "Paramount", a wholly owned subsidiary of G & W.

5. On or about August 14, 1967, the Articles of Incorporation of Desilu were amended to change the name of Desilu Productions, Inc. to DPI Liquidating Corp., hereinafter referred to as "DPI", and concurrently therewith DPI filed a Certificate of Election to Wind Up and Dissolve with the Secretary of State of the State of California and the County Clerk of Los Angeles County.

---

3. *Pretrial Conference Order*, May 8, 1967, p. 8.

6. DPI is not engaged in any business in the County of Los Angeles or elsewhere, and pursuant to said Agreement and Plan of Reorganization may not engage in business.

7. DPI has transferred and assigned all of the G & W preferred stock it received to the DPI shareholders of record on July 25, 1967, and delivered such stock to the Chase Manhattan Bank of New York City for distribution to such shareholders in exchange for DPI stock.

8. On or about August 15, 1967, plaintiff Daugherty surrendered her 53 shares of stock of DPI (formerly known as Desilu), constituting her entire interest in DPI, in exchange for G & W preferred stock. Said G & W preferred stock was issued to plaintiff on August 21, 1967, and she no longer is a shareholder of DPI.

Based upon these new facts and circumstances, the defendants moved for and were granted an order permitting them to file a supplemental answer incorporating the same. Since these changed facts and circumstances are in all essentials uncontested as between the parties, the Court has indicated its willingness to entertain the stipulation for dismissal on the merits which has been filed herein.

## CONCLUSIONS OF LAW

It is clear to the Court and we conclude as a matter of law that, as a result of the "practical merger" between DPI (Desilu) and Paramount, the corporate entity DPI (Desilu) no longer has any interest in the recovery sought by plaintiff herein. The exact mechanics of the transaction are not important because, while the agreements and transfers between DPI (Desilu), Paramount and G & W were cast in the form of a Section 368(a) (1) (C) reorganization under the 1954 Internal Revenue Code,[4] the substantive effect of the transactions was to "merge" DPI (Desilu) into the surviving corporation Paramount.

■ By reason of the foregoing, DPI (Desilu) no longer has any claim or cause of action which the plaintiff herein, or any other shareholder of DPI (Desilu), can bring or maintain against the individual defendants on behalf of DPI (Desilu).

■ Finally, since no other shareholder of DPI (Desilu) has sought to intervene or join in this action and since, by reason of the "practical merger" of DPI (Desilu) and Paramount, no former or existing shareholder could have any basis for bringing or prosecuting a derivative action on behalf of DPI (Desilu), this action should be dismissed on the merits without requiring the notice to other shareholders provided in Rule 23.1, Federal Rules of Civil Procedure, 28 U.S.C. Rule 23.1.[5]

4. "§ 368. *Definitions relating to corporate reorganizations.*

"(a)     *Reorganization.*

"(1)     *In General.* For purposes of parts I and II and this part, the term 'reorganization' means—

"(C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in - control of the acquiring corporation), of 'substantially all of the properties of another corporation, but in determining whether the exchange is solely for stock the assumption by the acquiring corporation of a liability of the other, or the fact that property

acquired is subject to a liability, shall be disregarded."

5. "Rule 23.1. *Derivative Actions by Shareholders.*

"In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a

The subject matter of Rule 23.1, "Derivative Actions by Shareholders", was formerly covered by old Rule 23(b) and (c), "Class Actions",[6] until July 1, 1966, when Rule 23.1 was added as a special rule for derivative actions and Rule 23 was substantially revised for class actions.

The notice of a proposed dismissal or compromise of a class action required by old Rule 23(c) was intended "to prevent a collusive dismissal by plaintiff of an action in which others may be legitimately interested. It does not apply to an order of dismissal of the court upon the merits." Pelelas v. Caterpillar Tractor Co., 113 F.2d 629, 633 (7th Cir. 1940).[7]

By the same token, under the same old Rule 23(c) and as indicated by Barron & Holtzoff and Moore, supra, note 7, the courts have uniformly refused to order notice of court-entered dismissal in stockholders' derivative suits, a special form of class action, to all shareholders where it appears conclusively that the facts alleged in the complaint have changed to such an extent that "the questions raised by the complaint have become moot," because in such case "there is no compromise or abandonment of any existing valid claim," the dismissal by the court "is on the merits rather than by agree-

collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. *The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.* [emphasis added] Added Feb. 28, 1966, eff. July 1, 1966."

6. "Rule 23. *Class Actions.*

\*  \*  \*  \*  \*

"(b) *Secondary Action by Shareholders.* In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the complaint shall be verified by oath and shall aver (1) that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law and (2) that the action is not a collusive one to confer on a court of the United States ju-

risdiction of any action of which it would not otherwise have jurisdiction. The complaint shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort.

"(c) *Dismissal or Compromise.* A class action shall not be dismissed or compromised without the approval of the court. If the right sought to be enforced is one defined in paragraph (1) of subdivision (a) of this rule notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. If the right is one defined in paragraphs (2) or (3) of subdivision (a) notice shall be given only if the court requires it."

7. Citing Hutchinson v. Fidelity Inv. Ass'n, 106 F.2d 431, 133 A.L.R. 1061 (4th Cir. 1939) which interpreted old Rule 23(c) at page 436:

"The notice therein provided for is required in case of voluntary dismissal or compromise of a class action, so as to limit the power of the named plaintiff to terminate the suit which he has brought for others as well as for himself. It was never intended, of course, that such notice should be a condition precedent to dismissal by the court after hearing on the merits."

See also: Barron & Holtzoff, Federal Practice and Procedure (1961) Sec. 570, pp. 332–333; Moore's Federal Practice (2d ed. 1967), Sec. 23.24, pp. 3550–3551.

ment" and "it appears, therefore, that notice to all shareholders of the motion for dismissal would involve a needless expense and is not required by Rule 23 (c)." Smith v. Industrial Securities Corporation, 49 F.Supp. 959, 960 (D.Conn. 1943);[8] Mullins v. De Soto Securities Co., 45 F.Supp. 871, 886 (W.D.La.1942).[9]

The Court in the case here before it is well aware, as was the Court in Mashek v. Silberstein, 20 F.R.D. 421, 422 (S.D.N.Y.1957) note 9 hereinabove, that it must be alert to protect shareholders other than the plaintiff where any valid claims by them exist. But where, as here and as in *Smith, Mullins, Pelelas, Hutchinson* and *Massaro*, changed facts and circumstances have rendered the questions of the complaint moot, there is no reason in fact or in law why the dismissal on the merits should be conditioned upon notice to all the shareholders other than the plaintiff. There is no person, shareholder or otherwise, by whom a derivative action might or could be initiated, prosecuted or maintained on behalf of DPI (Desilu). There are no shareholders whose interests might be or could be in any way adversely affected or prejudiced by not being given or not receiving notice of the dismissal on the merits.

It follows that, by reason of the foregoing decision which includes the Findings of Fact and Conclusions of Law required by Rule 52, Federal Rules of Civil Procedure, the Court holds that the plaintiff has no standing to sue and that the action and the complaint herein should be dismissed.

Let judgment be entered accordingly.

---

8. Citing Hutchinson v. Fidelity Inv. Ass'n, 106 F.2d 431 (4th Cir. 1939), supra, note 7, and Massaro v. Fisk Rubber Corporation, 36 F.Supp. 382, 386 (D. Mass.1941).

9. Citing Hutchinson v. Fidelity Inv. Ass'n, 106 F.2d 431, 436 (4th Cir. 1939), supra, notes 7 and 8, and Pelelas v. Caterpillar Tractor Co., 113 F.2d 629 (7th Cir. 1940).

Cf. Partridge v. St. Louis Joint Stock Land Bank, 130 F.2d 281 (8th Cir. 1942) where the court entered dismissal of a bondholder's class suit for want of prosecution by the plaintiff without giving the Rule 23 notice to other members of the bondholder class represented by plaintiff; and Mashek v. Silberstein, 20 F.R.D. 421, 422 (S.D.N.Y.1957) where the court entered dismissal of a stockholder's derivative suit, in this case at the instance of the plaintiff, without giving the Rule 23(c) notice to other shareholders *but* did require plaintiff to submit to a deposition as a condition precedent.