CHARLES M. SHELTON AND ANOTHER *vs.* LEVI HADLOCK.

New Haven & Fairfield Cos., June T., 1892. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and FENN, JS.

Where a party claims to hold the land of an ancestor against the heir by virtue of a sale to satisfy debts, he must establish the fact that such debts existed and that all proceedings required for the sequestration of the land for their payment were had.

Where the probate decree ordering the sale of the land to pay the debts

shows the jurisdictional facts on its face, it is *primâ facie* evidence of those facts, but is open to contradiction.

But where all the jurisdictional facts had been separately passed upon by the probate court and no appeals had been taken, it was held that the jurisdictional facts were conclusively established.

Where debts are contracted by a married woman upon the credit of her separate estate, her estate alone is liable.

In such a case creditors would be compelled, if she were living, to resort to a court of equity for an appropriation of her estate to the payment of their claims; but after her death they could reach the same result by presenting their claims against her estate.

The commissioners being an equitable as well as legal tribunal, it would be their duty to allow any claim against her estate that could have been supported before an equitable tribunal.

Where in such a case claims were allowed by the commissioners and no appeals taken, it was held that the allowance would be conclusive evidence that the claims were such as her estate was holden to pay. Such an allowance would bind the estate and become the rule for the probate court in the application of the assets to the payment of the debts as fully as a judgment of the Superior Court.

A purchaser of the land of a married woman from her administrator, also purchased the life estate in the same land of her husband as tenant by the curtesy. Held that the latter estate became merged in the former, and that certain special circumstances of the case were not sufficient to take it out of the general rule.

[Argued June 7th—decided June 30th, 1892.]

ACTION to recover possession of real estate, with damages; brought to the Superior Court in New Haven County, and tried to the court before *Thayer, J.* Facts found and judgment rendered for the defendant, and appeal by the plaintiffs.

*J. C. Chamberlain,* with whom were *N. W. Bishop* and *C. M. Shelton,* for the appellants.

1. Catherine A. Shelton was married to Charles T. Shelton in 1835. The plaintiffs are their sons and only heirs at law. On the 26th of December, 1865, the real estate in suit was conveyed to said Catherine. At the date of her marriage our law regarding the husband's interest in the real estate of his wife was the same as at common law, the first modification of that law being enacted in 1845, and not till after her death did any of the changes made affect her right to bind herself so as to incur debts. By the common law the husband was entitled to the use of all the real estate of his

wife during the continuance of the marriage, and in case of the birth of living issue, during his life. He was responsible for all her debts and might be compelled to pay them. This was the law of the case in 1866 when she died. Three things follow :—1st. Mrs. Shelton did not in fact die intestate; she did not owe a dollar; her final expenses, that are stated in the commissioners' report, were owed by her husband and not by her, and he was legally responsible for their payment.—2d. Her real estate by operation of law descended to her heirs, the present plaintiffs, subject to the tenancy by the curtesy consummate in her husband.—3d. No conveyance, conditional or absolute, no proceeding in bankruptcy by or against Charles T. Shelton, could in any way affect any interest he had in said real estate but his curtesy. The fee was not in him. Immediately upon the death of the owner it had descended to her heirs, these plaintiffs, burdened with this curtesy, which was the estate the defendant obtained by his mortgage and subsequent foreclosure, and which he enjoyed without interruption and by right from January 28th, 1873, until the death of Charles T. Shelton in June, 1885. The *jus possessionis* being always in the rightful owner, the plaintiffs made out a *primâ facie* case entitling them to recover. When they proved that fact, and that neither their mother in her lifetime nor they since her death had ever conveyed away this property, they stood upon the strength of their own title. 2 Greenl. Ev., § 331. The burden of proof, we submit, was then upon the defendant, to show such title in himself, or some one else other than the plaintiffs, as would defeat this *primâ facie* title of the plaintiffs.

2. The answer set up by the defendant is an attempt to show such title. It is to the effect that on January 28th, 1873, Charles T. Shelton borrowed of him $2,000 and secured the same by a mortgage upon the demanded premises, then owned by said Charles, and that on the 4th of March, 1878, he obtained a full title to the premises by a decree of the Superior Court on a foreclosure suit brought by him. Now the defendant must substantiate affirmatively this defence

and show that the legal title was in some way vested in
Charles T. Shelton. How does he attempt to prove this?
By setting forth the proceedings of the court of probate for
the district of New Haven, and the foreclosure proceedings
in the Superior Court. Upon the validity of the decree of
that court ordering the sale he must stand, if stand he does.
Can that decree in the light of the facts and the law as it
then stood be upheld? That it can be collaterally attacked
in exactly the manner we are attempting to do now for lack
of sufficient jurisdictional facts, is well settled law in this
state. In 1868 the only jurisdiction of the probate court
over the real estate of a deceased person was the power to
order it sold when necessary for the purpose of realizing
money with which to pay debts, and if this purpose is not
plainly and affirmatively shown by the records of the court
the order of sale has no validity, and no title passes by
means of a deed executed in pursuance of it. *Wattles* v.
*Hyde*, 9 Conn., 13; Freeman on Void Judicial Sales, 32;
5 Am. & Eng. Encyclopædia of Law, 272; Rorer on Ju-
dicial Sales, 95; *Lamson* v. *Schutt*, 4 Allen, 361; *Heath* v.
*Wells*, 5 Pick., 145; *Aiken* v. *Morse*, 104 Mass., 279; *Tarbell*
v. *Parker*, 106 id., 349; *Brown* v. *Sumner*, 31 Verm., 671;
*Johnson* v. *Bearsley*, 65 Mo., 250; *Davis* v. *Smith*, 75 id.,
219, 222; *Boston* v. *Murray*, 94 id., 175, 181. An inspection
of the record discloses the fact that no debts existed or could
exist which could have been proven or were proven against this
estate, and all purchasers under the title purporting to have
been obtained by virtue of this probate order had the full-
est notice of the fact that this decedent from the very nature
of the case was as incapable in law of contracting debts as
an unborn child. The probate record also discloses the fact
that she was a married woman with a husband living and
could not contract any debts during coverture. No position
in the law can be better settled in this state than this. A
woman married at this time was utterly incapable of incur-
ring any liabilities which could bind her personally while
alive, or be a claim against her administrators after her death.
The whole range of our decisions up to the time of her

death-negates any such idea as personal liability upon the part of a married woman, and those decided since that date all recognize the uniform state of the law upon that subject. *Butler* v. *Buckingham*, 5 Day, 492; *Gaylor* v. *Payne*, 4 Conn., 190, 196; *Watrous* v. *Chalker*, 7 id., 223, 228; *Annan* v. *Merritt*, 13 id., 487; *Dickinson* v. *Glenney*, 27 id., 104, 113; *Donovan's Appeal from Probate*, 41 id., 555; *Williams* v. *King*, 43 id., 569; *Smith* v. *Williams*, 43 id., 409. Other states follow the same rule. *Smith* v. *Bird*, 3 Allen, 37; *Crane* v. *Kelley*, 7 id., 250; *Shaw* v. *Thompson*, 16 Pick., 198; *Martin* v. *Dwelly*, 6 Wend., 13; *Davis* v. *Smith*, 75 Mo., 227; *Boston* v. *Murray*, 94 id., 178. In no manner then could these so-called debts have come into existence between 1835 and the date of Mrs. Shelton's death. How then could they exist? If at all it must be from the fact that they were ante-nuptial. But the facts show that no ante-nuptial debts could exist, as this woman had been married more than thirty years, and the statute of limitations would long prior to that time have run against the longest-lived of obligations incurred by her when a feme-sole. Other classes of people could waive the benefits of the statute, but a married woman could not, neither could her administrator. *Brown* v. *Anderson*, 13 Mass., 201; *Dawes* v. *Shed*, 15 id., 6; *Heath* v. *Wells*, 5 Pick., 143.

3. Is there anything in the case which will rebut the positive presumption of law that this woman neither had nor could have any debts? Certainly nothing unless the finding of the commissioners alone imports such verity that it not only proves those things which could be true but also proves the existence of facts which could not exist. But their finding is not a judgment and proves nothing as to the actual existence of debts. It is but a means adopted by the court to regulate the marshaling of the assets. *Weed* v. *Grant*, 30 Conn., 74; *Loomis* v. *Eaton*, 32 id., 550, and note on page 552; *Bailey* v. *Bussing*, 37 id., 353. Upon this finding of the commissioners and upon its conclusiveness alone rests the defendant's claim in this aspect of the case. Of course no claim was or could be made that this was sep-

arate estate, but if it had been even then a married woman had no power to contract debts because she possessed such property. All that she could do was to bind that property so that a court of equity could sequester a certain portion of it to satisfy the claim she had put upon it. Alive or dead she was not the object of the action in such case, which was in all respects *in rem*, and after her death it could be prosecuted by making the heirs defendants just as well as though she were alive. A court of probate had no jurisdiction of such actions. *Watrous* v. *Chalker*, 7 Conn., 223, 228; *Brown* v. *Sumner*, 31 Vt., 671; *Carpenter* v. *Mitchell*, 50 Ill., 473; *Davis* v. *Smith*, 75 Mo., 219; *Boston* v. *Murray*, 94 id., 177.

4. Charles T. Shelton originally possessed the life estate, and nothing which took place, it seems to us, changed his relation to this property. When the court says that "he conveyed to his assignee all his property, including his life estate by the curtesy in the real estate of said Catherine," the court states a conclusion of law rather than of fact, and draws a wrong inference at that, for by the terms of the bankrupt act this very estate was exempt from the operation of this law and did not pass by his assignment since it was exempt from attachment by the state law. The fact then was that Charles T. Shelton always held that life estate and could not as a matter of law purchase any interest which he could use to cut off the remaindermen, the law being uniform to the effect that any purchase of a claim against the estate being deemed to be for the benefit of his own interests and he incapable of holding it to injure the rights of those for whom he was trustee. *Dickinson* v. *Codwise*, 1 Sandf. Ch., 226; *Varney* v. *Stevens*, 22 Maine, 331; *Caufman* v. *Presbyterian Congregation of Cedar Spring*, 6 Binney, 59. Such would be the case were the husband now in life and in possession. His grantee takes no greater rights than he, for the purchaser is chargeable with full notice of everything that appears in the records of either the probate court or town clerk's office relative to the title of this property.

*R. S. Pickett*, for the appellee.

ANDREWS, C. J. This is a complaint in the nature of disseizin brought to recover the possession of certain premises in the town of New Haven. The plaintiffs claim title to the premises by descent from their mother, Catherine A. Shelton, who died intestate in August, 1866, leaving her husband, Charles T. Shelton, surviving her. He died in June, 1885. Mr. and Mrs. Shelton were married in 1835. They were then domiciled in New Haven and remained domiciled there until their respective deaths at the dates above mentioned. Mrs. Shelton at the time of her death was the owner of the land in question, with other lands in New Haven, all of which was under mortgages executed by her and her husband to the amount of $8,500, and was also subject to the husband's estate by the curtesy.

The defendant claims that at the time of Mrs. Shelton's death her interest in all of said lands was subject to certain debts legally provable against it to an amount much greater than the whole value of her interest ; that such proceedings were had in the probate court in the district of New Haven, that the whole of her interest was lawfully sold by the order of the probate court to satisfy said claims ; and that by sundry mesne conveyances all the title to the tract of land in question has come to and is now vested in him.

The estate which an heir takes by descent in the lands of an ancestor is not an absolute one ; it is subject to all the debts or claims which in law or equity may be proved against it. If there are no debts or claims chargeable against the real estate then the heir takes the whole ; but if the amount of such claims is greater than the value of all the real estate, then the heir has nothing. In any given case, as for instance the present one, where a party claims to hold the land of an ancestor against the heir by virtue of a sale to satisfy such debts, he must establish the fact that such debts existed and that all the proceedings required to sequester the land of the ancestor for their payment were had.

The defendant insists that he has established the existence

of debts against the estate of Mrs. Shelton and the regularity and legality of all the proceedings by which her land was sold to pay those debts. He produced on the trial copies from the probate records in the district of New Haven, by which it appears that administration was duly granted on the intestate estate of Catherine A. Shelton; that appraisers were appointed, who returned an appraisal and inventory of her whole estate at $170, all of which was real estate, which appraisal was accepted by the court; that the estate was represented insolvent and that commissioners were appointed who made return that they had allowed claims against the estate to the amount of $1,459.03, —which return of their doings was received and accepted by the court and made a part of its records; that the court found the debts to exceed the personal estate and that her estate was insolvent, and ordered all her real estate to be sold to pay the debts; and that pursuant to such order the real estate was sold to one Messena Clark, from whom the defendant derives his title to the same.

No evidence outside the commissioners' report, which was offered by the plaintiffs in connection with the rest of the probate records, was introduced or offered to show the nature or character of the claims allowed by the commissioners, or when or under what circumstances they were contracted or were claimed before the commissioners to have been contracted. And it is found that the plaintiffs had no actual notice of the probate proceedings or of the conveyances by which the title came to the defendant until after their father's death.

The Superior Court rendered judgment in favor of the defendant. The plaintiffs appeal to this court, and allege various reasons of appeal, all of which may be included in the answer to one question:—Did the court of probate have jurisdiction to order the sale of Mrs. Shelton's real estate? If it did the judgment is right; otherwise there is error.

The plaintiffs make this the controlling question in their brief. They say:—" Upon the validity of the decree of that court" (that is the court of probate,) "ordering the

sale, the defendant must stand, if stand he does." And their whole argument stands or falls upon the correctness of this statement.

Jurisdiction as applied to a court means the right of exercising the functions of a legal tribunal. The power to hear and determine a cause is jurisdiction.

The statutes of this state have committed the settlement of the estates of deceased persons exclusively to the courts of probate. A section of the statutes commands that "when any person shall die intestate the court of probate in the district in which the deceased last dwelt shall grant administration of the estate." Other sections point out and provide for the several steps that must be taken, so that the estate shall be settled in a due and orderly manner—as the appointment of appraisers, and their return of the inventory of the estate, and the duty of the court relative to such inventory; and if the estate is represented insolvent, the appointment of commissioners, the duty of the commissioners, and how they are to proceed in its performance, their return of their doings to the court and the proceedings of the court upon such return, to the end that in case the debts exceed the amount of the personal property the real estate may be ordered to be sold to pay the excess.

Mrs. Shelton last dwelt in the probate district of New Haven. She died there intestate. The probate court in that district had jurisdiction, by the express command of the statutes, to settle her estate. A comparison of the several steps taken by that court in the settlement of her estate, as they appear in the finding of facts, with the several provisions of the statutes to which reference is made, shows that each of these steps was authorized by some statute. That court then, in making all such orders as were necessary in the ordinary settlement of the estate, was acting within its jurisdiction. The decrees of a court of probate on matters within its jurisdiction are as conclusive as the decisions of any other court of record. *Dickinson* v. *Hayes*, 31 Conn., 422; *Mix's Appeal from Probate*, 35 id., 122; *Kellogg* v. *Johnson*, 38 id., 269.

The appellants, while not denying that the court of probate in New Haven had the general jurisdiction to settle the estate of Catherine A. Shelton, say that the order for the sale of her land was void. They insist that as the law was in 1866 the court of probate, even in the settlement of an estate over which it had general jurisdiction, could order real estate to be sold *only* when the debts and charges allowed exceeded the personal estate, and then only for such excess; that the existence of debts and charges exceeding the personal estate is a jurisdictional fact in the strictest sense, and that unless the existence of that fact was shown on the face of such an order, the order was void; and that if upon the face of the order it was found that this fact did exist, such finding could be shown by extraneous evidence to be untrue and so the order shown to be void. *Sears* v. *Terry*, 26 Conn., 273; *Culver's Appeal from Probate*, 48 id., 173.

In the present case the order of sale does not appear in the record. The course of the argument indicates that it was sufficient on its face and that so it was *primâ facie* valid according to the case just cited.

The reason of appeal upon which the plaintiff's argument is based, is the second one—that the court erred and mistook the law in deciding that the court of probate was not a court of limited jurisdiction and that its decrees could not be attacked collaterally. It is difficult from the facts found in the record to see how the question could have arisen in the Superior Court as it is presented here. But giving the appellants the fullest benefit of their claim and admitting that it was a technical error for the Superior Court to so decide, does it appear that they have suffered anything from that ruling? They offered no extraneous evidence. In that sense they made no attack at all. They asked the Superior Court to inspect the other orders and decrees made by the probate court in the settlement of Mrs. Shelton's estate, especially the return of the appraisers and the return of the doings of the commissioners, and to decide therefrom as a matter of law that the jurisdictional facts appearing in

the order of s'ale were untrue. Admitting again that this is in the nature of a collateral attack, there is nothing of which the plaintiffs can complain if the Superior Court decided correctly upon that request. In effect they asked the Superior Court to hold that the return of the appraisers, the doings of the commissioners, and the decrees of the court in accepting those returns, were void, and that the facts therein established furnished no support to the jurisdictional facts found in the order of sale. And they now ask this court to say that the Superior Court erred in not so holding. We cannot agree with the plaintiffs. We think the Superior Court committed no error in this particular. The inventory had been returned to and accepted by the probate court. The commissioners had made return of their doings, which had been accepted and approved by the probate court. No appeal had been taken from the decree of the probate court accepting the inventory, nor from the doings of the commissioners, nor from the decree of the court accepting their doings. All these were decrees within the admitted jurisdiction of the probate court. These were decrees which could not be attacked collaterally. Not appealed from, they were, and are, conclusive. The Superior Court was required to hold them to be true. Being true they sustained the order for the sale of land.

The whole argument of the plaintiffs briefly stated is this:—"The record of the probate court discloses the fact that Mrs. Shelton was a married woman with a husband living; being a married woman she could not as a matter of law contract a debt for which her estate was liable; and that the allowance by the commissioners of a claim against her estate was not a judgment, but was wholly illegal, and therefore the order to sell her land based only upon such pretended debts was void." It is somewhat strained to say that the probate record discloses that Mrs. Shelton left a husband living. That fact is not disclosed in the record of that court, unless the recital in the inventory returned by the appraisers, which valued her real estate "subject to mortgage and the life estate of her husband" is such a dis-

closure. It appears nowhere else. But passing this, we think the plaintiffs are mistaken in their claims of law. Mrs. Shelton, although she could not make a contract which would bind her personally, could bind her property, whether it was her separate property or otherwise. If the debts allowed by the commissioners were contracted upon the credit of her estate, then her estate alone would be liable for their payment. Her husband would not be liable. *Donalds* v. *Plumb,* 8 Conn., 447; *Imlay* v. *Huntington,* 20 id., 146; *Leavitt* v. *Beirne,* 21 id., 1; *Taylor* v. *Shelton,* 30 id., 122; *Wells* v. *Thorman,* 37 id., 318; 2 Story's Eq. Jur., §§ 1401, 1402.

While she was living the creditors would be compelled to resort to a court of equity to appropriate her estate in payment of their debts. After her death the creditors could reach the same end in the court of probate through the medium of commissioners on her estate. The commissioners were an equitable tribunal as well as a legal one. Any claim against her estate which could have been supported before an equitable tribunal it was their duty to allow. *Palmer* v. *Green,* 6 Conn., 19; *Brown* v. *Slater,* 16 id., 192; *Collins* v. *Tillou,* 26 id., 373; *Litchfield's Appeal from Probate,* 28 id., 137.

The debts having been allowed by the commissioners and no appeal having been taken, that allowance was conclusive that the debts were such as the estate of Mrs. Shelton was holden to pay. The allowance of a claim against an insolvent estate by the commissioners, while it is not a judgment that can be used for any other purpose, is as against the estate itself a judgment. It binds the estate and becomes the rule for the probate court in the application of the assets to the payment of the debts as fully as a judgment of the Superior Court. *Loomis* v. *Eaton,* 32 Conn., 550; *Bailey* v. *Bussing,* 37 id., 349; *First Nat. Bank* v. *Hartford Life & Annuity Ins. Co.,* 45 id., 22.

Another claim made by the plaintiffs is that the life estate in the lands in question of their father did not merge in the estate in fee of their mother while both were owned by

Messena Clark. Messena Clark purchased the estate of Mrs. Shelton from her administrator, as has been already stated. Mr. Clark also purchased the life estate Mr. Shelton had in the same land from his assignee in bankruptcy. It is stated in 3 Black. Com., 177, that "whenever a greater estate and a less coincide and meet in one and the same person without any intermediate estate, the less is immediately annihilated; or, in the law phrase, it is said to be merged, that is, sunk or drowned, in the greater." There is nothing in the case to show why the ordinary effect did not take place as to these estates.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.