## PALMER v. PALMER et al.
### No. 3864.

District Court, D. Connecticut.
March 4, 1940.

Thomas R. Robinson, of New Haven, Conn. (Woodruff & Klein, of New Haven, Conn., of counsel), for plaintiff.

Frank L. McGuire, of New London, Conn. (Hull, McGuire & Hull, of New London, Conn., and Pullman & Comley, of Bridgeport, Conn., of counsel), for defendants.

CLARK, Circuit Judge (acting as District Judge pursuant to statutory designation).

The plaintiff herein is suing to recover his inheritance in the estates of Charles T. Palmer and Louisa T. Palmer upon the claim that he is son of the former and grandson of the latter decedent. Both estates have been fully settled before the Probate Court for the District of New London, Connecticut, with no recognition even of plaintiff's existence, and plaintiff's appeals from the probate decrees of distribution have been dismissed in the Superior Court of Connecticut on the ground that he was not related to the decedents. Palmer v. Reeves, 120 Conn. 405, 182 A. 138 (affirming the dismissals). In this action brought against the distributees of the two estates, and the personal representatives of the estates of Louisa T. Palmer and those distributees who have died, plaintiff again attacks the validity of these probate decrees and asks for such legal and equitable relief as will give him his claimed shares, or their monetary equivalent, in the two estates.

Even since coming to this court, the case has had a considerable history. A plea to the jurisdiction having been denied, defendants filed extensive defenses, relying on the probate decrees. After hearings on various motions Judge Hincks eventually held in substance, on a demurrer to the defenses, that the probate decrees of distribution were final and a defense to the action if the probate court had initial jurisdiction to administer the estates by reason of the deaths of the decedents while residents of and owning property within the probate district. Thereupon plaintiff obtained permission to and did replead, asserting that Charles T. Palmer was actually a resident of New York City, and not of New London, at his death.

Accordingly the case now stands upon new pleadings filed about a year ago, consisting of a "Substituted Complaint," the defendants' "Defenses to the Second Substituted Complaint," and a "Reply" by the plaintiff. The reply was originally filed without authorization under Federal Rules 7(a) and 12, 28 U.S.C.A. following section 723c, but an order for it has since been entered by the court. The present proceedings arise on defendants' motion for judgment on the pleadings and motion for summary judgment. These are presented as two separate motions, the former dealing only with issues of law on the pleadings and the latter only with whether there were any triable issues of fact in view of the affidavits filed. I see no occasion for treating them as thus distinct. Both motions seek a single relief, judgment for the defendants; in granting that relief I feel I am justified in relying on any or all appropriate grounds disclosed by any or all the papers of record in the case. United States Trust Co. of New York v. Sears, D.C.Conn., 29 F. Supp. 643, 645.[1]

---

[1] In that case I pointed out some division of opinion as to the need of distinguishing the various motions for judgment under the federal rules, particularly with reference to the use of material not contained in the pleadings in support of other than summary judgment motions. If these various motions must be kept in

Though the action was begun prior to the adoption of the new federal rules of civil procedure, yet all the present pleadings have been filed after those rules became effective. The pleadings here hardly demonstrate "the simplicity and brevity of statement which the rules contemplate." Federal Rule 84. Instead, the parties have followed the clothesbasket theory of pleading, with everything conceivable dumped in without overmuch regard for order. A long and repetitious complaint in four counts and various appendices has called forth the defendants' "defenses," twenty-three in number, strewn with incorporations by reference, and supported by an appendix thereto attached, and another attached to a former pleading and therein referred to, both running to hundreds of typewritten pages.[2] This document, in turn, has brought forth a reply in twenty-six counts. And that has served to bring us to the pending motions and the supporting affidavits. True, the nature of the case made extensive reference to probate records natural; but the allegations of claim and defense proper might still have remained simple and direct.

Notwithstanding this avalanche of words, the substantial issues of the case do appear. Though important, they are rather clear cut. They involve the validity and extent of the probate decrees, whether plaintiff is now entitled to attack them in view of his unsuccessful venture to that end in the Connecticut courts, and whether a genuine issue of material fact, surviving a motion for summary judgment, exists as to the place of last residence of Charles T. Palmer. In addition, there are subordinate issues involving the statute of limitations and the statute of non-claim barring claims not duly presented against the estates of Connecticut decedents.

It is the plaintiff's contention that he was born to Charles T. Palmer and Audrey A. Palmer in 1914 and that they were married in 1918. Audrey A. Palmer was named as a defendant in this action, but has not been served with process and has not appeared. Charles T. Palmer died July 22, 1922, and on August 15, 1922, Audrey A. Palmer made application to the Probate Court for the District of New London for the grant of administration on his estate, reciting under oath that the deceased last dwelt in the Town of New London and died intestate, possessed of an estate and leaving herself as his widow and Louisa T. Palmer, his mother, as his only heirs at law. The latter, describing herself as "all the heirs at law" of the deceased, signed a waiver of notice on the application. The court thereupon dispensed with notice "for cause shown" and granted administration to the defendant Reeves, who proceeded to settle the estate. In 1923, the court of probate passed an order finding that "Audrey A. Palmer is the widow, and Louisa T. Palmer, mother, are the heirs at law" and directing distribution "to the heirs at law according to law." The widow and the mother then signed an agreement of mutual distribution entitled, "Estate of Charles T. Palmer, late of New London, in said District, Deceased," wherein they stated that they were "all of the persons interested, as widow, heir, next of kin and distributees in the distributive property of the estate of said deceased," and made division of the property between them. The probate court then passed an order approving and accepting the mutual distribution and ordering it recorded, and in due course accepted the administrator's accounts showing that this distribution had been made.

The division of the property thus made was in accordance with the statutory rule of distribution of an intestate estate when the widow and the mother are the takers (now Conn.Gen.Stat.1930, § 5156);[3] the widow received $2,000 outright and shared the remainder equally with the mother. The amount so divided was bare-

separate compartments, then little has been gained by the abolition of the demurrer, for a hierarchy of objecting proceedings, each calling for separate procedural steps and formal hearings, will then still persist. Logically but one relief is sought; as a matter of practical convenience all appropriate reasons therefor should be advanced and considered as a single step. See Pike, Objections to Pleadings under the New Federal Rules of Civil Procedure, 47 Yale L.J. 50;

Clark on Code Pleading, 371–373; 1 Moore's Federal Practice 645–647; Federal Rule 56(c).

[2] There is constant repetition of the triple authentication of the probate decrees by clerk, judge, and clerk again, each with a red wafer seal.

[3] Since the applicable Connecticut statutes have not varied since 1922, on matters to which they are cited, references hereinafter are to the Revision of 1930, rather than the Revision of 1918.

ly short of $800,000 after paying all taxes, claims, and expenses of administration. Of this estate plaintiff now claims two-thirds in accordance with the same statute which gives the widow one-third and children two-thirds when these survive. On this basis one-sixth is due from Audrey A. Palmer, his alleged mother, and the balance from the estate of Louisa T. Palmer and the legatees under the latter's will.

Louisa T. Palmer died in 1925, and her will was thereafter admitted to probate by the New London Court of Probate on an application made by her daughters Theodora and Virginia claiming to be all of her heirs at law and with notice waived by them and dispensed with by the court "for cause shown." Her will gave one-third of her residuary estate to her son Charles, but provided that if he did not survive her, his share should go to his child or to his children. The court appointed the two daughters and Reeves as administrators c.t.a. of the will, and they proceeded to settle this estate. On January 27, 1926, the three administrators petitioned the court to order distribution of the residuary estate to Theodora Palmer and Virginia Palmer, "the residuary legatees named in the will and the sole heirs of the estate of the late Louisa T. Palmer." The court found the allegations of this application true, ordered this distribution to be made, and accepted accounts showing that it had been made. Under this distribution each daughter received about $700,000. Plaintiff therefore claims from Reeves, as surviving administrator of this estate, and from the personal representatives of the two daughters, both now deceased (one after action brought, her representatives having been cited in the action), the sum of nearly $400,000 as that part of his inheritance from Charles T. Palmer's estate which was converted by Louisa T. Palmer before her death, and the further sum of more than $500,000 as one-third of the residuary estate due him under Louisa's will.

Plaintiff's appeals from the probate decrees of distribution, which resulted unsuccessfully, Palmer v. Reeves, supra, were taken in 1934, some years after settlements of both estates had been completed. Plaintiff alleged that he was a minor and was acting through a next friend. His appeals were duly allowed by the probate court. Gen.Stat. § 4992. In the Superior Court, Reeves, as administrator of Charles T. Palmer's estate, and Reeves and Virginia Palmer, as administrators c.t.a. of Louisa T. Palmer's estate, filed pleas to the jurisdiction asserting that appellant was not Charles's son and hence was not a person "aggrieved" by the probate orders, as required under Gen.Stat. § 4990, to support a probate appeal. After a full trial on the merits, the court found that "in each action, the appellant is Robert Byron Price, the son of William A. Price and Elizabeth M. Price, and not the son of Charles T. Palmer and Audrey Palmer," and sustained the plea to the jurisdiction. Palmer v. Reeves, supra, affirmed.

In earlier stages of the present action plaintiff was required to choose between pursuit of a remedy at law or one in equity. He has now framed his complaint to seek all and any relief to which the facts entitle him, and he claims that under the new federal rules he may so proceed. In this he is correct, and we must consider the action in that light. In effect he is pursuing legal claims for conversion and for money had and received, and equitable claims for the declaration of constructive trusts and for an accounting.

When diversity exists and the matters in controversy exceed $3,000, a federal court may properly consider an attack made upon the decrees of a state court of probate. But the federal court may grant relief only when similar relief would be available in the state courts of the district. Sutton v. English, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664; Broderick's Will, 21 Wall. 503, 22 L.Ed. 599. Accordingly this action must be viewed as though it were brought in the Superior Court for Connecticut. I therefore limit myself to consideration of such grounds of attack upon the probate decrees as would be considered by that court.

I. Plaintiff's first claim is that all the probate decrees were invalid for lack of notice to him and that, since he was a minor at the time of the probate settlements, he is entitled to proceed now that he has reached majority. But as Judge Hincks pointed out in ruling on the demurrer, plaintiff received every benefit possible from notice by his appeals taken in 1934. This is particularly true in Connecticut, where the trial of appeals from probate in the Superior Court is completely de novo, even to the taking of testimony. Slattery v. Woodin, 90 Conn. 48, 96 A. 178;

Dunham v. Dunham, 97 Conn. 440, 117 A. 504; Cleaveland, Hewitt and Clark, Probate Law and Practice of Connecticut, § 118. He has had his day in court and cannot now claim lack of jurisdiction of the probate decrees for want of notice. Dennison v. Hyde, 6 Conn. 508. It appears that the probate court did order notice (the form of which does not appear) on some of the proceedings such as the hearings on the administration accounts. In any event, the constitutional requirements of due process for proceedings in rem of this nature appear to have been satisfied, Christianson v. King County, 239 U.S. 356, 373, 36 S.Ct. 114, 60 L.Ed. 327, and the decrees would be at most not void for lack of notice, but only ex parte as to plaintiff, Gill v. Bromley, 107 Conn. 281, 284, 140 A. 721; Murdoch v. Murdoch, 81 Conn. 681, 688, 72 A. 290, 29 Am.St.Rep. 231, and thus subject to modification or revocation by the probate court or the Superior Court on appeal, but only under the conditions stated in the statute. Gen.Stat. § 4779 (before "final settlement" of the estate); Gill v. Bromley, supra; Massey v. Foote, 92 Conn. 25, 101 A. 499. Plaintiff has therefore already had all the remedy that he could in any way claim as of right for any lack of notice to him of the probate proceedings.

▆▆ II (a). Plaintiff's second claim is that the probate decrees are void because the facts requisite to the probate court's jurisdiction did not exist. It has long been a settled rule in Connecticut that courts of probate are of limited statutory jurisdiction not aided by presumptions, that their jurisdiction must appear of record, and that it may be attacked later. See cases collected in Cleaveland, Hewitt and Clark, Probate Law and Practice of Connecticut, §§ 128-133; also Sears v. Terry, 26 Conn. 273; Olmstead's Appeal, 43 Conn. 110; Palmer v. Reeves, supra; Plant v. Harrison, 36 Misc. 649, 74 N.Y. S. 411. The case last cited is interesting for its careful résumé of the earlier Connecticut cases and its conclusion that the New York court need not respect the Connecticut court's finding of jurisdictional facts, though the Connecticut court would not have a like privilege as to findings of the New York court. Compare Cleaveland, Hewitt and Clark, supra at pages 131, 132. In Willetts' Appeal, 50 Conn. 330, the Connecticut court did so respect a New York decree inconsistent with an earlier Connecticut probate decree, a re-sult apparently not required under the full faith and credit clause of the Federal Constitution. Tilt v. Kelsey, 207 U.S. 43, 51, 52, 28 S.Ct. 1, 52 L.Ed. 95. For a time it was thought that decrees of the Superior Court on appeal and after trial de novo might have a greater force, Mack's Appeal, 71 Conn. 122, 41 A. 242, but it seems now settled that that court sits only as an appellate court of probate and subject to the same limitations. Palmer v. Reeves, supra, citing cases.

▆▆ Here the important jurisdictional fact is death of the person who has left estate to be administered, "domiciled," Gen.Stat. § 4766, or having "last dwelt," Gen.Stat. §§ 4886, 4904, in the probate district. It is settled that this means a dwelling or residence as a permanent home. Cases cited in Cleaveland, Hewitt and Clark, supra, §§ 27, 28, and Plant v. Harrison, supra. Since it has not been questioned that Louisa T. Palmer died a resident of and owning property in the New London District, it is clear that the probate court properly assumed jurisdiction of her estate. The statute, § 4766, provides that courts of probate "may make any lawful orders or decrees to carry into effect the power and jurisdiction conferred upon them by the several provisions" of the statutes, and § 4769 provides that "no order made by a court of probate upon any matter within its jurisdiction shall be attacked collaterally except for fraud, or set aside save by appeal." Accordingly, it is well settled that probate decrees ascertaining heirs and distributees and ordering or accepting distribution are final if original jurisdiction to administer the estates exists. Kellogg v. Johnson, 38 Conn. 269; Hotchkiss' Appeal, 89 Conn. 420, 95 A. 26; Williamson's Appeal, 123 Conn. 424, 196 A. 770; State ex rel. Beardsley v. London & Lancashire Indemnity Co., 124 Conn. 416, 422, 200 A. 567.

▆▆ Hence, so far as any issue of jurisdiction is concerned, the probate decrees in Louisa's estate, including the finding true of the allegations that her daughters were "her sole heirs," must be taken as final, and not now subject to attack by the plaintiff. Some question is made whether these decrees apply also to the real estate, of which each of these estates had a comparatively small amount. But though those decrees lose none of their force by affirmance on appeal on the one issue of importance here, that was not

necessary, nor is the question one of parties to the appeal. It was necessary to find as a step in distribution who were the takers of both the realty and personalty (expressly so required by Gen.Stat. § 4977), and the court did so find. The heirs were clearly parties to the probate order and were therefore bound.

(b) Plaintiff makes a more serious attack upon the existence of the requisite jurisdictional facts in the probate proceedings upon the estate of Charles T. Palmer, plaintiff's alleged father. The present complaint contends that Charles T. Palmer died a resident of New York, and not a resident of New London, as the probate court found. Upon this branch of the case I conclude that (1) upon the pleadings and the affidavits submitted there is no genuine issue of material fact under Federal Rule 56(c) to justify the denial of summary judgment, and (2) in any event, the New London Probate Court had jurisdiction to administer Charles T. Palmer's estate and pass the orders in question even if he were a non-resident decedent.

■■■■■■ (1) The evidence now of record supporting the probate decree that Charles T. Palmer's last residence or permanent home was in New London is most persuasive. The probate decrees so finding, even if not conclusive, have prima facie force, Shelton v. Hadlock, 62 Conn. 143, 152, 25 A. 483. They have strong support from various material appearing in the probate records such as the allegations or recitals of all the parties, including the widow, Audrey A. Palmer, in the several applications made to the court and particularly the nature of the property shown to be possessed by the decedent at his death. Included are an undivided one-third share in what appears to be the family residence at 581 Pequot Avenue, New London, and numerous forms of tangible and intangible personal property, including automobiles and oil paintings, at New London, as well as arrears of salary from the Palmer Brothers Company of New London, of which deceased was vice-president. Against this there is essentially nothing suggesting a residence in New York; there is only a small New York bank account, insignificant compared to his several New London accounts and some oil paintings, but located at the Macbeth and Milch galleries, in New York, not at a residence.

This evidence is now reinforced by several affidavits filed herein. The first is from defendant Reeves, administrator of both estates, assistant treasurer of the Palmer Brothers Company, financial and confidential adviser of the family of deceased's late father. This sets forth details of the residence of the deceased in New London up to his death; his work for the Palmer Brothers Company in New London; his declarations in all sorts of official papers—tax lists for the assessors, reports as administrator on his father's estate, income tax returns, tax lists for the State of Connecticut, as well as the address he continuously gave for the registration of his stocks and bonds, and so on—and finally details of his death on a trip to California and burial in New London, with records thereof reciting his New London residence based on information furnished by Audrey A. Palmer, the widow. Further affidavits come from a New London tax assessor showing like declarations of the deceased on his tax lists; from the New London town clerk showing that the deceased was a registered voter in New London, and showing also the recitals on his California death certificates of his New London address upon the information of Audrey A. Palmer; from the assistant treasurer of the New York, New Haven & Hartford Railroad showing the registration of company bonds in the name of the deceased at his New London address from 1921 until after his death; and from the assistant treasurer of the State of Connecticut showing like registration of various bonds of the deceased for the purpose of taxation under state statutes from 1918 until after his death. This evidence seems conclusive that the deceased himself considered New London as his permanent residence.

Against this, the plaintiff has filed three affidavits, of which one, that of Audrey A. Palmer, requires careful consideration. Of the others, one shows that on his marriage license issued in New York in 1918, deceased gave his residence as the Hotel Biltmore, New York City, a not unnatural declaration under the circumstances, nor one persuasive of an intent to change his permanent home. This affidavit, as well as another, purports to show declarations of Audrey A. Palmer, and perhaps direct evidence, that the marital residence of Charles and Audrey Palmer was in New York City;

and it is suggested that other testimony to this effect is available if a deposition can be ordered of a now reluctant witness. But Mrs. Palmer is obviously the witness who has the most direct knowledge of these facts, and since her affidavit is most carefully prepared, it may be taken as stating the essential points which plaintiff hopes to establish at trial. In this affidavit, executed February 21, 1940, she recites that from their marriage in 1918 until his death she and Charles T. Palmer "actually lived as husband and wife in the city of New York, and maintained our only family residence as husband and wife" there, living first at the Hotel Alexandria and then the Hotel Seville; that when they went on the Western trip in 1922, on which Charles died in California, they placed their family furniture and personal belongings in a storage warehouse; that at no time after their marriage did they "live as husband and wife or maintain an actual family residence" in New London; and that though he owned a house in New London they never as husband and wife spent a night under the roof of his house in New London "and never had any intention of making it our residence during our married life."

Plaintiff argues that this suggests the conclusion that Charles T. Palmer "last dwelt" or was domiciled in New York. If that were so, a question might arise as to how far the plaintiff could now contradict Mrs. Palmer's sworn statement to the New London Probate Court made soon after Charles's death in 1922, the recital of the mutual distribution, and the recitals made by the plaintiff throughout his appeal in the state courts and in the early pleadings in this action. In Schutte v. Douglass, 90 Conn. 529, 97 A. 906, a challenge of probate jurisdiction was denied one who had invoked the action of the probate court. But there is another more reasonable conclusion from the evidence of record, supported by statements of counsel at the argument that Audrey A. Palmer was not acceptable or accepted by the Palmer family as one of their number and was not welcome at the family home. It seems clear that Charles intended to keep his permanent residence at his old home while taking care of his wife at the different New York hotels mentioned in the affidavits. This is supported by the careful wording of Mrs. Palmer's affidavit, which never refers to Charles's residence as such, but carefully refers only to "our family residence." In Dorus v. Lyon, 92 Conn. 55, 101 A. 490, it was held that one might have a residence for the purpose of service of process in this state, even though during the same period he and his wife had an apartment in another state. Compare also Clegg v. Bishop, 105 Conn. 564, 569, 136 A. 102; Chaplin v. Bloomfield, 92 Conn. 395, 396, 103 A. 118; Kelsey v. Green, 69 Conn. 291, 301, 37 A. 679, 38 L. R.A. 471. Giving due effect to all this evidence, it seems clear that Charles T. Palmer was "domiciled" in New London at his death, and that there is no genuine issue as to any material fact which will establish error on the part of the probate court in so finding.

 (2) I conclude further that the jurisdiction of the probate court would survive even if Charles T. Palmer actually did reside in New York; though it must be conceded that the matter is not beyond dispute under the Connecticut cases, none of which, however, deal with the exact point. Under Conn.Gen.Stat. § 4904, the probate court may grant administration on a non-resident decedent's property found in the district. The jurisdictional facts here are death and property ownership. Beach's Appeal, 76 Conn. 118, 122, 55 A. 596, raising the question, however, whether the latter is a jurisdictional fact in the same sense as the fact of death. In administering such an estate, the probate court has discretion whether to distribute the assets or to transfer them to the court of principal administration. Cleaveland, Hewitt and Clark, supra, at pages 226, 227, citing cases. There is little practical difference in the course of administration here, whether Charles died a resident of New York or of New London. If the former was the case, under the then New York law, Decedents' Estate Law, former § 98(6), Consol.Laws 1909, c. 13, the widow and the mother would have shared the estate equally, not equally after an initial allowance to the widow of $2,000, as under Connecticut law. Since the parties here were of age and made an agreement of mutual distribution, that difference in law was actually of no importance here. The only other difference would concern the inheritance taxes due New York and Connecticut, but such taxes were actually paid to both states, whose taxing authorities may be relied on to pro-

tect the interests they represent, whatever a local probate court may have done.

Is, therefore, an erroneous statement of the basis of jurisdiction when jurisdiction actually exists sufficient to vitiate all later proceedings? In Willetts' Appeal, supra, it was said that the grant of administration on an estate when a valid will was in existence was "void." In Delehanty v. Pitkin, 76 Conn. 412, 56 A. 881, on the other hand, it was held that probate of a will when a later will was in existence was only a mistake, not an error of jurisdiction. Other cases, many of them cited above, assert the settled Connecticut rule that probate jurisdiction is limited and statutory, and that it is not to be presumed, but must be shown to exist from the record. A statute passed in 1925, after this estate was settled, provides that upon grant of administration the probate court shall make a finding as to the domicil of the decedent at the time of his death, and that any person interested in the estate may appeal from such finding. P.A.1925, c. 92, now a part of Gen.Stat. § 4766. This obviously contemplates the possibility of reversal of this finding alone, leaving the rest of the decree standing. It tends to show that an erroneous finding on domicil may be corrected on appeal, but does not make all the prior probate proceedings void. The statute is very broad in allowing an appeal to any person "interested," instead of to any person "aggrieved," as in the general provision for appeals. Gen.Stat. § 4994, cited supra. It does not purport to change the prior jurisdiction of the probate court and may be considered therefore as throwing some light on the earlier law.

I do not think it is possible to say with finality how the Connecticut courts would decide this issue. The earlier cases, if carried further to a logical conclusion, suggest that the probate decrees may be void unless every detail of jurisdiction is clearly and correctly stated of record. Nevertheless the probate court does actually have jurisdiction, and denial of any force to its decrees under the circumstances seems a doubtful extension of a rather unfortunate rule of vulnerability of probate decrees. Under the statutes the parties have full and extensive powers of appeal, of which the plaintiff here has availed himself, with the opportunity for a complete retrial in the Superior Court to those injured by the action of the probate court. It therefore seems in the interest of justice to support the probate decrees so entered, in the absence of definite state rulings to the contrary. I therefore conclude that the probate orders of distribution on the estate of Charles T. Palmer were not void even if he died a resident of New York.

III. The allegations of the complaint may serve as a basis for challenging the decrees of the probate courts for fraud, as well as for claims of damages for fraud against the distributees. These attacks must rest upon the invalidity of the probate decrees, which, in turn, must rest upon a showing that the plaintiff is really the son of Charles and the grandson of Louisa, and that the parties who made application for the probate of Louisa's will and Charles's will fraudulently concealed this fact from the court. It would seem to be an answer that this very issue was found as a fact against the plaintiff. He asserts that under Gen.Stat. § 5537, decision on a plea in abatement does not preclude a later trial on the merits. This undoubted general rule does not reach the point that res adjudicata applies to conclude as against parties and their privies, not merely matters of formal decree, but also all material facts found as a result of a full and complete trial. See the very similar case of Cuff v. United States, 9 Cir., 64 F.2d 624; also Broderick's Will, supra, 21 Wall. at page 517, 22 L.Ed. 599; and compare von Moschzisker, Res Judicata, 38 Yale L.J. 299, 301; 35 Yale L.J. 607. If the parties have properly had their day in court, the result is and should be binding to avoid relitigation of an issue which should be concluded. The further point is made that, except for the administrator named as a formal party to the appeal, the other parties were not bound. Judge Hincks has already ruled that the parties to be affected by the appellate decree were all those here present except perhaps as to the realty. The realty here had been sold by the time the distribution was made. Irrespective of that fact, I think, as I have stated earlier, that since the heirs were parties to the probate decrees, they were either actual parties to the appeal, or were represented by the administrator Reeves, and hence are bound by the decree on appeal and protected by it.

IV. There seems to me, however, another and a complete answer to all the

claims made herein by the plaintiff, both those based on fraud and those based on want of jurisdiction. That is that under Connecticut law plaintiff has no standing to attack the probate decrees collaterally as he is here trying to do. When Plant v. Harrison, supra, was decided, the Connecticut courts had not settled the form and manner in which an attack could be made on a probate decree for fraud or want of jurisdiction, and the court there concluded that it might be made either directly or collaterally. Later in Hall v. Hall, 91 Conn. 514, 100 A. 441, the Connecticut court, pointing out the disadvantages of a rule allowing parties to question probate decrees in any court or proceeding they chose, held that the remedy open to parties was by direct attack only. The rule was followed and explained further in Folwell v. Howell, 117 Conn. 565, 169 A. 199, where it was made clear that a party can seek relief in the Superior Court only to the extent of a judgment declaring the probate decree null and void and restraining the defendants from setting it up as a defense to further proceedings in the probate court, thus leaving the parties so that they can proceed anew in the latter court. In other words, a party, even if he procures his relief in the Superior Court, must eventually proceed directly in the probate court for a new settlement of the estate. Therefore, if any relief can be granted in this action, it is only a stay of enforcement of the probate decrees until plaintiff can act in the probate court which has now this estate in its custody and control. This seems a reasonable and salutary rule, limiting the otherwise improvidently wide attack permissible on Connecticut probate decrees. But it has already been conclusively settled that plaintiff has no standing before the Connecticut Probate Court, as he is not the son of the deceased. Hence he must proceed as a party, if at all; and since he is not a party, he will have no standing before the state probate courts and has none to commence his attack here.

V. Perhaps a final word should be said as to the claim that Louisa T. Palmer converted the property which she received from the estate of Charles T. Palmer. Of course, if the decrees in Charles's estate stand, there was no conversion. But even if the probate settlement of Charles T. Palmer's estate could be upset, it is doubtful that this property can be traced beyond Louisa's estate to her distributees. No claim for conversion was presented to Louisa's estate, and therefore under the statute of non-claim, § 4914, Gen.Stat., there is a total bar of this claim, with no exceptions for disability or otherwise. Cleaveland, Hewitt and Clark, supra, § 204, citing cases. It is true that under the statute after-accrued claims may be presented to an estate for payment out of any property then remaining or in the hands of distributees if the claim is duly exhibited to the administrator within four months after it accrues. And there seems no ground for holding that this was an after-accrued claim, a category sharply limited under Connecticut law. Cleaveland, Hewitt and Clark, supra, § 207, citing cases. There was no fraudulent concealment of a right of action. Every step taken was a matter of record in the probate court. Whatever might be the situation as to ordinary statutes of limitation, it seems clear that the bar of this statute cannot be avoided.

The litigation between these parties has pursued its weary course now for many years. The essential issue, that of plaintiff's paternity, has been thoroughly tried in a court of competent jurisdiction. It should not be relitigated unless there is a clear right to such a retrial. I think it is clear, for the several reasons here stated, that there is no such right. The motions should therefore be granted. Judgment is directed for the defendants on the merits and with costs.