## MASSARO v. FISK RUBBER CORPORATION et al.

### No. 640 Civ. A.

District Court, D. Massachusetts.

Jan. 10, 1941.

David J. Cohen and Edward J. Flavin, both of Boston, Mass., for plaintiff.

Phillips Ketchum, George R. Blodgett and Herrick, Smith, Donald & Farley, all of Boston, Mass., for defendant Fisk Rubber Corp.

Hale & Dorr and Grafton L. Wilson, all of Boston, Mass., for defendant U. S. Rubber Co.

BREWSTER, District Judge.

In this action defendants have filed motions to dismiss. Of the grounds specified in the motions, only two are now relied upon. They are (1) that the court should not retain jurisdiction to determine the issues raised by the complaint, and (2) that the complaint fails to state a claim upon which relief can be granted.

The argument advanced in support of the first ground is that inasmuch as the plaintiff attacks as invalid a sale of all the assets of the defendant Fisk Rubber Company (hereinafter referred to as "Fisk"), a Delaware corporation, which has consummated the sale, discontinued its business and distributed nearly all of the assets to its stockholders and is practically dissolved, the controversy should be settled in the courts of Delaware. There is precedent for declining to retain jurisdic-

tion over proceedings involving the internal affairs of a foreign corporation in the courts of this District. Securities and Exchange Commission v. O'Hara Re-Election Committee, D.C., 28 F.Supp. 523, 525; Harrison v. Triplex Gold Mines, 1 Cir., 33 F.2d 667, 672; Richardson v. Clinton Wall Trunk Mfg. Co., 181 Mass. 580, 582, 64 N.E. 400.

It is also extremely doubtful whether, on the particular facts of the case at bar, this court would be competent to afford the relief which the plaintiff seeks.

The second ground urged for the dismissal of the bill is framed to bring it within Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides that "Every defense, in law or fact, to a claim for relief in any pleading * * * shall be asserted in the responsive pleading * * *, except that the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted."

If this motion were to be disposed of solely upon the allegations of the complaint, it is my opinion that the plaintiff has failed to state a case which would entitle him to relief. If the allegations of the complaint may be supplemented or modified by uncontroverted facts shown to exist, there can be only one conclusion reached respecting the plaintiff's right to maintain this action.

In applying Rule 12(b) (6) the courts are not in full agreement upon the question whether the defense of failure to state a claim upon which relief can be granted must stand or fall on the allegations of the complaint. Some courts have treated this defense as "essentially the same as the demurrer in the early equity practice." McConville v. District of Columbia, D. C., 26 F.Supp. 295, 296; Sherover v. John Wanamaker, D.C., 29 F.Supp. 650.

On the other hand, there is respectable authority which holds that the earlier inhibition against "speaking demurrers" has been removed by the new Federal Rules. Judge Charles E. Clark, now of the Second Circuit, holds the opinion that Rule 12(b) was meant to do more than merely substitute a motion to dismiss for the demurrer. See Proceedings of Cleveland Institute on Federal Rules, pp. 242, 245.

In a footnote to Palmer v. Palmer, D.C., 31 F.Supp. 861, 863, Judge Clark, referring to motions other than summary judgment motions, observed: "If these various motions must be kept in separate compartments, then little has been gained by the abolition of the demurrer, for a hierarchy of objecting proceedings, each calling for separate procedural steps and formal hearings, will then still persist."

In Alabama Independent Service Station Ass'n, Inc. v. Shell Petroleum Corporation, D.C., 28 F.Supp. 386, 389, it was held that facts appearing in affidavits could be considered in the disposition of a motion to dismiss under Rule 12(b) (6). The court noted the difference in language used in that rule and that used in old Equity Rule 29, 28 U.S.C.A. following section 723, which expressly limited motions to dismiss to defenses "in point of law *arising upon the face of the bill.*" (Italics supplied.)

To the same effect see Moore's Federal Practice, Vol. 1, § 12.03.

■ I am of the opinion that the more liberal view should prevail, especially in a case where affidavits disclose undisputed relevant facts which do not contradict the allegations of the complaint. ·

In the case at bar, the defendants have filed affidavits. Plaintiff has agreed that these affidavits truly state the facts therein referred to and, so far as they supplement the allegations of the complaint and do not present any issue of fact, I deem it proper, in determining the validity of plaintiff's claim, to consider not only the complaint but the facts disclosed in the affidavits.

First the facts alleged in the complaint: The plaintiff is the holder of 100 out of 439,923 shares of the common stock of Fisk. The directors of Fisk accepted an offer from the defendant United States Rubber Company for the assets of Fisk which called for the payment of approximately $6,795,730 in cash and 109,981 shares of the common stock of United States Rubber which then had a market value of $40 a share,—the consideration paid for the assets, therefore, in cash and stock was the equivalent of $11,194,790. It would enable Fisk, upon liquidation, to retire the preferred stock at $110 and yield to holders of common stock about $17 per share. Fisk had a total capital stock and capital surplus of $10,843,868 with an earned surplus of $2,415,481, or a total net worth of $13,259,349.

At a meeting of stockholders, held December 29, 1939, a majority of stock en-

titled to vote voted to accept the offer. The votes were largely solicited by executives and directors of Fisk and their nominees. The offer was submitted to stockholders on the basis of so-called "market value" rather than the value of the assets of a going concern. The directors neglected, by appraisal or otherwise, to ascertain and advise stockholders respecting the value of the assets, especially the intangible assets such as good will, patent, trade-mark, etc., and failed to advise stockholders the value of the stock of Fisk, based on earning power of the corporation.

The book value of the common stock was in excess of that which the holders would receive under the proposed purchase price. That the price was grossly inadequate and the acceptance of it would result in irrevocable damage to the plaintiff. There were also allegations to the effect that the terms of the offer provided for the payment of large sums of money to the president of Fisk and other executives, thus disqualifying them from exercising independent judgment and the president from serving on the proxy committee, and finally, it was alleged that since the directors of Fisk had voted in favor of the proposal and manifested keen interest in the consummation of the sale, any attempt to obtain action by the directors to prevent the consummation would be of no avail.

The foregoing substantially covers the ultimate facts alleged in the bill.

From the agreed facts, it further appears that on December 10 a notice of a special meeting to be held on December 29, 1939, was mailed to every stockholder of Fisk. Accompanying this notice was a letter to each stockholder which, among other things, disclosed the following,—

(1) A full copy of the offer accepted by the Board of Directors which had been accepted by the directors subject to ratification by the stockholders.

(2) Market quotations of both preferred and common stock of Fisk and common stock of the United States Rubber Company from 1934 to October 31, 1939, showing the range each year. From these quotations, it appears that, during the period, Fisk common had been as low as 3½ in 1937 and that the closing price on December 9, 1939, of Fisk was—preferred 105¾ and common 15⅛. Attention is called to the fact that on November 1, 1939, Fisk preferred was selling at 83½ and common at 10⅛ and that the sharp rise between then and December 9 was due to the publication of the proposed offer of the Rubber Company.

(3) Tables showing the financial condition of Fisk on December 31, 1937 and 1938 and on October 31, 1939.

(4) Fisk had only paid one dividend of 50 cents a share since it was reorganized in 1933.

(5) The purchase price included cash to pay accrued dividends on preferred stock and certain retirement payments to the president and other executives and employees who were to lose their positions if the sale went through but who agreed, if free to do so, to continue to act in an advisory capacity for the purchaser.

(6) The president and one other director who was to profit by the transaction did not vote as directors upon the acceptance of the offer. None of the directors who voted upon the offer were to receive any of the retirement payments above referred to.

(7) Only two directors held preferred stock aggregating 1,100 shares and only three held common stock aggregating 4,500 shares.

(8) The proxies were solicited by outside agencies, selected by Fisk but paid by the Rubber Company. From the affidavits it further appears that the offer of the Rubber Company was accepted by the Board of Directors of Fisk subject to ratification by the stockholders and that the action of the directors in accepting the offer was ratified by a majority vote of both clases of stock of Fisk. That less than ⅒ of 1% of the preferred and less than 14% of the common stock voted against the sale. The agreement to purchase and sell became effective upon the ratification by the stockholders, and on December 30, 1939 a large part of the purchase price had been paid to Fisk.

On January 18, 1940, the deeds and instruments of transfer were delivered and the remaining price paid except for minor adjustments made soon thereafter. That in accordance with the statutes of Delaware the corporation proceeded to dissolve and a certificate of dissolution was filed in the office of the Secretary of State for the State of Delaware on March 14, 1940. Over 99% of the preferred stock has been surrendered and received its distribution in full of $110 and accrued dividend per

share. Over 97% of the common stock has been presented and received its pro rata part of the United States Rubber Company common shares and a first cash distribution of $6 per share. The shares of the United States Rubber Company and cash necessary to make the same payments to Fisk preferred and common stockholders, who have not yet surrendered or presented their certificates, have been deposited so distribution can be made from day to day as the certificates are surrendered or presented.

There is an affidavit which shows that at the time of the reorganization, in 1933, the preferred and common stock of Fisk was issued to creditors of the old company in varying amounts, and that these creditors hold both classes of stock except as they may have sold or otherwise disposed of the same since the reorganization was completed.

■ It is not denied that Fisk complied with the statutes of the state of Delaware governing the sale of its assets, or that the action of the Board of Directors in accepting the offer was not duly ratified by the stockholders. It is quite apparent that no director who voted to submit the offer was actuated by any motive of personal gain beyond that accruing to all of the stockholders. In the letter accompanying the notice of the special meeting, the stockholders were fully and fairly advised respecting the terms of the offer and the financial condition of the company, as shown on the books of the corporation. It was made plain to stockholders that the offer was submitted on market quotations and book values; that the inventories were low and that patent and other intangibles were not included. Nevertheless, by a substantial majority the stockholders voted to authorize the sale, and by a three-fourths vote, required by the laws of Delaware, the stockholders authorized the dissolution and the liquidation of the company. The allegations of the complaint, standing alone, would afford no grounds for contending that the sale was vitiated by fraud, and when contemplated in the light of the other undisputed facts, it is impossible to discover wherein any rights of the plaintiff have been invaded.

The plaintiff complains that the directors ought to have submitted the offer on some other basis than that of market and book values, and that by neglecting so to do the court is required to declare the whole transaction voidable. If the stockholders saw fit to act upon the information presented without demanding more, the action of the majority cannot be attacked as illegal by a minority stockholder. The attempt to claim that improper influences were brought to bear upon the majority through payments to executives fails, in the light of the agreed facts, which disclose that only one director was the recipient of retirement payments and that he did not vote upon the acceptance of the offer, and the further reasonable inference that a number of holders of common stock were also holders of preferred stock who received $110 a share for stock that had never sold for more than 105¾.

■ It is not the function of this court to review the adequacy of the purchase price unless the disparity is so great as to shock the conscience of the court or warrant the conclusion that the majority was actuated by improper motives, thereby working injury to the minority. A mistake in judgment, if one be conceded, is not enough to justify interference by the court in a corporate transaction, otherwise lawful, when tested by the laws of the state of incorporation. Allaun v. Consolidated Oil Company, 16 Del.Ch. 318, 147 A. 257; Allied Chemical & Dye Corp. v. Steel & Tube Co., 14 Del.Ch. 64, 122 A. 142.

■ If there were to be a trial involving an inquiry into the actual value of the assets of Fisk, tangible and intangible, it would entail long and expensive litigation. In this court in such cases it has been deemed proper to resolve in favor of the defendant any doubts respecting the rights of the plaintiff to recover in order that the law may be settled before the parties and court are put to the expense and trouble of a protracted trial.

■ This precedent should be followed in a case where the facts reveal insurmountable obstacles to the maintenance of plaintiff's claim. The policy of avoiding unnecessary litigation is compatible with the spirit and purpose of the New Federal Rules of Civil Procedure.

I am persuaded that there can be only one outcome of this action, namely, a decree for the defendants. Therefore, on the pleadings and agreed facts, I grant the motions to dismiss, and an order may be entered accordingly.

Rule 23(c) requires notice in certain class actions of a proposed dismissal or compromise. I have considered this rule and have reached the conclusion that it does not apply to this case. Motions to dismiss have been argued and briefed, and after careful consideration this court is of the opinion that the complaint does not state a claim upon which relief can be granted. Under these circumstances, no notice is necessary. See Hutchinson v. Fidelity Inv. Ass'n, 4 Cir., 106 F.2d 431; Pelelas v. Caterpillar Tractor Co., 7 Cir., 113 F.2d 629.