**McCAMMON et al. v. FIDELITY INV. ASS'N.**

District Court, N. D. West Virginia.
Jan. 31, 1939.

118

Strother & McDonald, of Clarksburg, W. Va., Seymour M. Heilbron, of New York City, and Einhorn & Schachtel, of Philadelphia, Pa., for plaintiffs.

Tom B. Foulk, Austin V. Wood, and James G. McClure, all of Wheeling, W. Va., and Koontz & Koontz and W. W. Goldsmith, all of Charleston, W. Va., for defendant Fidelity Investment Ass'n.

Edward Lamb and Lowell Goerlich, both of Toledo, Ohio, for intervenor Alice P. Hutchinson.

Raymond Huwe, of Cincinnati, Ohio, for intervenor Florence Fordyce.

BAKER, District Judge.

The civil action here considered was instituted by the filing of a complaint upon the 19th of December, 1938, on behalf of Robert F. McCammon, and others, against the Fidelity Investment Association, a West Virginia corporation. Upon December 23, 1938, Alice P. Hutchinson filed her motion to intervene and her answer to the aforementioned complaint. Upon December 30th the defendant, Fidelity Investment Association filed its answer to the complaint filed against it by Robert F. McCammon, and others, and also its answer to the intervening petition of Alice P. Hutchinson. Both of these answers prayed for a judgment upon the pleadings, and prayed that upon said pleadings the relief sought in the original complaint and in the answer of Alice P. Hutchinson be denied and that this proceeding be dismissed.

These matters were set down for hearing upon January 6, 1939, and all counsel of record were notified to that effect. Upon said January 6th, all parties appeared by counsel and, in addition thereto, Florence Fordyce appeared by counsel and filed her answer and counterclaim.

Briefs were filed by the defendant in support of its motion for judgment on the pleadings and for a dismissal of this action forthwith. Counter-briefs were filed by the plaintiffs and intervenors. These briefs were considered by the Court and beginning on January 9th, oral arguments were heard for two days.

On January 11th, the Court filed a written memorandum refusing to enter judgment upon the pleadings and retaining jurisdiction of the action, but also refusing to appoint a Receiver at that time. The Court at this time pointed out to counsel the great need for prompt action and urged that the quickest method of ascertaining the facts involved, which would be consistent with accuracy, be adopted; and the Court suggested that this was a matter requiring sound business judgment rather than strict and rigid adherence to legal niceties.

Following this suggestion of the Court the parties entered into a stipulation which was filed in this proceeding upon the 16th day of January, 1939, stating that they were of the opinion that a lengthy trial of this cause would involve burdensome expense both to the defendant company and to its contract holders; that great delay would be detrimental to the best interests of the contract holders; and that the requisite facts pertinent to the determination of the issues between the parties in interest hereto could be most speedily ascertained by an investigative committee acting with the aid of auditors and experts. On the 16th of January, 1939, in conformity with the above stipulation, this Court entered an Order appointing such a committee, consisting of all counsel of record herein and Charles P. Mead, Special Master. This committee was to be given free access to all books, records, documents and other papers and data of every kind and character relating to the financial condition of the defendant, and the mode in which its business had heretofore been conducted.

Upon the 26th day of January, 1939, Charles P. Mead, Special Master, filed his report in compliance with the provisions of the aforementioned Order. This report

was approved in toto by counsel for all litigants with the exception of Edward Lamb and Lowell Goerlich, the attorneys for Alice P. Hutchinson, an intervenor. Edward Lamb and Lowell Goerlich, upon the 26th day of January, 1939, filed their written exceptions to the report of the Special Master and stated that they did not desire to file a memorandum of authorities in support of their exceptions and further stated that they would and did expressly waive their right of verbal argument in support of said exceptions. The attorneys who approved the report of the Special Master were Seymour Heilbron, Ray L. Strother, Walter Schachtel, Raymond Huwe, Austin V. Wood, Tom B. Foulk, Arthur B. Koontz and James G. McClure. All of the above-mentioned attorneys, as well as Messrs. Lamb and Goerlich, specifically waived the ten-day period provided for the filing of exceptions to the report of the Special Master under the pertinent rule relating to Federal Practice. Following the reading of the report of the Special Master in open court upon the 26th day of January, 1939, the Court inquired of Messrs. Hohage, McGrogan and Moore, respectively, the representatives of the Securities Divisions of the States of Ohio, Indiana and Virginia, as to their impressions relative to the report of the Special Master. All of these representatives stated that while they could make no statement which would be binding upon their superiors, they felt that the proceedings in regard to the inspection of the books and records of the defendant company had been eminently fair and that the findings of the Special Master met with their individual approval.

As a result of the foregoing, it now becomes apparent that the Court has before him for consideration only the report of the Special Master herein and the exceptions filed thereto; all other questions relative to the pleadings having been fully determined as previously stated.

It might be well at this point, prior to an analysis of the aforementioned report, to make a general statement as to the nature of the defendant corporation and its business. The defendant, Fidelity Investment Association, is a West Virginia corporation, with principal offices in the City of Wheeling, West Virginia. This corporation was organized in the year 1911 and has continuously conducted its business of selling annuity contracts from the aforementioned date. Briefly, the method of operation of the business of the company results in the employment of salesmen to solicit purchases of investment contracts; receipt of payments in connection with investment contracts; investment of the payments received; and, thereafter, payment to contract holders of stipulated sums in accord with the settlement option exercised by such contract holders. In the latter particular the contract holder may elect to surrender the contract and receive in payment the amount provided for cash surrender; to receive a loan on the contract after surrendering the same as security for such loan; or, after the maturity of the contract, to receive repayment of proceeds in annual yearly installments or in accord with the provisions of other options, numbering in excess of one hundred.

The defendant further provides for purchasers, who may be eligible for such provision, an insurance feature, calling for self-completion of his contract in the event of his death. This is made possible by the purchase on the part of the defendant of requisite insurance to cover the same.

The company, as a guarantee of performance upon its part, agrees to deposit certain securities with the Treasurer of the State of West Virginia, under provisions of a West Virginia Statute compelling the same; namely, Section 3448, Michie's West Virginia Code Annotated. In other words, boiled down to its simplest terms, the Association sells a contract under which the contract holder pays to the Association a stipulated sum which is ordinarily in fixed monthly payments, and at the expiration of a stipulated time the Association repays to the contract holder a stipulated sum in the manner provided by the option, which said contract holder may elect.

The report of the Special Master will, for the purpose of this opinion, be divided into subdivisions which, for convenience, may be styled: First, That Portion Relating to the Question of Valuation; second, Affiliates and Subsidiaries; third, Contracts Issued by the Association and Its Respective Funds; fourth, Marginal Trading Practices and Overdrafts; fifth, Special Situations; sixth, Present Situation with Reference to Applications for Cancellation of Contracts; and, finally, Conclusions of Law.

The report, in the first thirteen pages thereof, discusses the vital question concerning the determination of the method

of evaluating the assets of the defendant to be followed in this proceeding. The principal question of fact necessary to a determination of this case is the solvency or insolvency of the Association and this question, in turn, depends upon the method followed in valuing the company's assets. The report indicates and recommends that "Sound Value," as defined in the formula prescribed by the Auditor of the State of West Virginia for the Fidelity Investment Association, should be used in determining the value of the assets in the various portfolios of the defendant. This formula is as follows:

1. Bonds and debentures that are not now in default of their interest or principal, and that have continued to pay interest, should be valued at par.

2. All preferred and common stocks should be valued at the market.

3. All mortgages, real estates and secured notes should be carried at book value until such time as an appraisal or offer for sale indicates the value to be less, at which time the value for each should be changed to the lesser figure.

4. All securities that are actually in default of principal or interest, or that have paid principal or interest in the past three years by the sale of additional securities or solely by means of borrowing money for this purpose, without having earnings equal to the amount to effect the loan, should be carried at current market prices.

After considering the report and the authorities generally with reference to the question of value, I am of the opinion that the "Sound Value", under the above formula, of the defendant's assets over and above its liabilities should be used in regard to the determination of its solvency.

The second portion of the report consists of an explanation relative to the totally owned subsidiary corporations of the defendant, namely, Fidel Association of New York, Incorporated, Marston Corporation, Paull Company and Marietta Company. The "Sound Value" formula hereinabove mentioned was used in determining the value of the underlying portfolios in regard to the subsidiary corporations here considered other than real estate of these corporations. As to real estate, Raymond F. Cragin, of the Cragin, Morris & Co., a real estate management and appraisal corporation of Cleveland, Ohio, determined the value used by the defendant company. An explanation of Mr. Cragin's approach to this problem is found upon pages 26 and 27 of the report.

The third matter discussed in the report is that of contracts issued by the defendant and its respective funds. The report indicates that using "Sound Value" as a basis the assets of the defendant exceed its liabilities, in each of the funds set aside for various types of contracts, with the exception of (a) its income reserve fund and (b) its special annuity, maturity and retirement fund; that the deficits in these funds are in the respective amount of $261,529.40, and $442,203.77, and that the total of these deficits is in the amount of $703,733.77. There is, however, an excess of assets in the general fund, exclusive of capital stock liability, in the amount of $1,313,386.11, which sum is adequate and sufficient to provide for the reserve necessary to cover the deficit in the aforementioned funds.

The question of marginal trading practices and overdrafts, making up the fourth portion of the report, is discussed upon pages 50 and 51 of the report. While the practices therein set forth have been discontinued, the Court cannot refrain, at this point, from admonishing the defendant with reference to its conduct as to marginal trading. Regulatory measures should be taken prohibiting a recurrence of this practice.

Special situations are discussed upon pages 52 and 53 of the report, and represent the fifth portion thereof. Inasmuch as no harm or detriment to the defendant association has been shown with reference to any of the special situations discussed in the report, it is difficult to understand in what manner these special situations have relationship to the relief prayed for by the plaintiffs.

The sixth portion of the report, the situation existing as to applications for cancellation of contracts, has no bearing upon the question of solvency, and merely illustrates a condition which would naturally follow with reference to any financial institution involved in litigation similar to that here considered.

Mr. Edward Lamb and Mr. Lowell Goerlich, in their exceptions to the Special Master's report, relate that the report should, first, "Outline the facts behind the trust for contractual relationship which

the Fidelity Investment Association has with its contract holders"; second, "Disclose the extent of the demands, totaling more than four millions of dollars, made for the withdrawal of cash surrender and loan value"; and third, "The use of the so-called West Virginia or 'Sound Value' theory of appraisal, rather than the market and actual value of the underlying securities."

The second and third of the objections above mentioned have been previously discussed in this Memorandum of Opinion, and nothing further need be said in that particular. The first of the aforementioned objections presents a question of law rather than of fact. Even though the relationship between the contract holder and the defendant be that of trustee and cestui 'que trust, the mode of evaluating the securities of the defendant would not be altered because of this fact and, inasmuch as approval has been given to the method used in the report in the determination of all the important questions relating to value, further consideration of the trust relationship between the parties becomes unimportant.

The relief prayed for in this proceeding is primarily that a receiver be appointed for the defendant, and the Court having considered the report of the Special Master as filed herein upon the 26th day of January, 1939, and now being of opinion that the plaintiffs and intervenors have not shown justification for the appointment of such a receiver, but, to the contrary, have shown, through the aforementioned report, that the defendant company is solvent, an order may be entered dismissing the petitions of the plaintiffs and of the respective intervenors.