## In re WARREN BROS. CO.
### No. 60186.

District Court, D. Massachusetts.
May 26, 1941.

George B. Crafts, of Cambridge, Mass., for debtor corporation.

Nutter, McClennen & Fish, of Boston, Mass., for Protective Committee for Cumulative Convertible Preferred Stock.

Delafield, Marsh, Porter & Hope, of New York City, for City Bank Farmers Trust Co.

John J. Burns, of Boston, Mass., for Protective Committee for the Common Stockholders.

Ropes, Gray, Best, Coolidge & Rugg, of Boston, Mass., for Louis J. Hunter et al., Protective Committee for the Holders of Sinking Fund Gold Notes and Convertible Sinking Fund Gold Debentures.

Edmund Burke, Jr., of Boston, Mass., for Securities and Exchange Commission.

George R. Farnum, of Boston, Mass., and Maxwell Katz, of New York City, for Cecil P. Stewart et al., for Protective Committee for Sinking Fund Gold Notes and Convertible Sinking Fund Gold Debentures.

BREWSTER, District Judge.

In these proceedings, brought under section 77B of the Bankruptcy Act, 11 U.S. C.A. § 207, there was referred to a special master the matter of the determination of the fair value of the property and assets of the debtor. By the order of appointment, the master was to report the evidence and his findings of fact thereon were to be final. After extended hearings, in which creditors, stockholders and the Securities & Exchange Commission participated, the master has transmitted the evidence and submitted a report. Subsequently, because of the opinion in Consolidated Rock Products Co. v. DuBois, 61 S.Ct. 675, 85 L.Ed. — decided March 3, 1941, the master deemed it expedient to submit a supplementary report which contained his findings on the prospective earnings of the debtor and rates of capitalization of profits. Objections have been filed by security holders and stockholders to both reports. The Securities and Exchange Commission filed objections to the first report. The matter is now before the court upon these objections and the debtor's motion for a confirmation of the report. This supplementary report, I take it, meets those objections filed to the first report which were based upon the master's omission to value separately the operating and non-operating assets, and his omission to compute a valuation of the operating assets based upon capitalized earnings.

The master finds that the present fair value of the assets of the debtor is as follows:

| Item | | | |
|---|---|---|---|
| 1 Cuban bonds | | | $4,829,265.00 |
| 2 Property other than Cuban bonds: | | | |
| (a) Assets other than securities | | $ 891,454.11 | |
| (b) Debtor's share of securities of subsidiary and affiliated operating companies | | 2,993,361.77 | |
| (c) Debtor's share of securities of subsidiaries and affiliated non-operating companies and other investment securities | | 563,891.31 | 4,448,707.19 |
| Total | | | $9,277,972.19 |

The master's valuation of the Cuban bonds was based in part on market quotations and in part upon expert testimony. His valuation of the operating assets was at their present fair value to a going concern and was based largely upon appraisal by officers of the debtor. (This valuation will hereinafter be referred to as the "appraisal value".) The value of the non-operating assets represents liquidation values. No serious objection is made respecting the valuation of these non-operating assets.

In his supplemental report, the master finds that the prospective yearly earnings of the operating assets, estimated on a gross business of $12,000,000, would be $255,468.21. These earnings, if capitalized on an 8% basis, which the master finds would be a reasonable basis, would give a valuation of $3,193,350 for the productive assets, which is approximately $200,000 more than the appraisal value. (This valuation will be hereinafter referred to as the "capitalized value".) The master nevertheless adhered to his original appraisal value and declined to determine the valuation of the operating assets solely on the basis of their earning power.

The new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, so far as they are not inconsistent with the Bankruptcy Act or with the General Orders, are to be followed as nearly as may be in bankruptcy proceedings. General Orders in Bankruptcy No. 37, 11 U.S.C.A. following section '53.

█ While the order appointing the master provided that his findings of fact upon the evidence were to be final, it may be questioned whether under Rule 53(e) (4) of F.R.C.P. they can be so treated, as no stipulation to that effect was ever entered into. But findings of fact are not to be disturbed unless clearly erroneous. Rule 53(e) (2). After careful consideration of arguments and briefs, I have not been persuaded that the master's factual findings are clearly erroneous; therefore, they will be accepted. I can see nothing to be gained by further discussion of this aspect of the case.

The stockholders and the Securities & Exchange Commission contend that the capitalized value should be adopted as the controlling factor in the valuation of the productive assets. The stockholders also contend that the master, in refusing to value the Cuban bonds at par, proceeded upon an erroneous conception of the rules of law applicable to the valuation of the debtor's property for the purposes of a plan of reorganization under 77B.

The following will show the differences in results if these contentions prevail:

Operating Assets.

| | | |
|---|---|---|
| Capitalized value | $3,193,350.00 | |
| Appraisal value | 2,993,361.00 | |
| | | |
| Excess of capitalized value over appraisal value | $ 199,989.00 | |
| Cuban bonds—par value | | $8,702,900.00 |
| Master's valuation | | 4,829,265.00 |
| | | |
| Excess of par value over master's value | | $3,873,635.00 |

Thus, if the stockholders are successful in establishing their claims, the valuation of the debtor's property would be increased by $4,073,624 to a total valuation of $13,351,596.19.

Two questions, which I conceive to be questions of law, are therefore raised which must be determined in order to dispose of the objections and the debtor's motion for confirmation. Upon the answers to these questions depend the right of the common stockholders to participate in any plan of reorganization.

It has been argued on behalf of the stockholders and also by the Securities & Exchange Commission that in valuing the productive assets the law requires that the controlling factor shall be the value based upon the capitalized prospective earnings of the corporation. In support of this argument Consolidated Rock Products v. DuBois, supra, is cited. It was, in that case, observed [61 S.Ct. 685, 85 L.Ed. ——]:

"Findings as to the earning capacity of an enterprise are essential to a determination of the feasibility as well as the fairness of a plan of reorganization. Whether or not the earnings may reasonably be expected to meet the interest and dividend requirements of the new securities is a sine qua non to a determination of the integrity and practicability of the new capital structure. It is also essential for satisfaction of the absolute priority rule of Case v. Los Angeles Lumber Products Co. [308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110, 41 Am. Bankr.Rep., N.S., 110], supra. Unless meticulous regard for earning capacity be had, indefensible participation of junior securities in plans of reorganization may result."

█ While it is clear that the court should have before it the findings of the master's supplemental report showing the

384

prospective earnings and a reasonable rate of capitalization, it does not follow that, as a matter of law, a valuation computed upon this basis is the only valuation that the court can consider. Undoubtedly it is a factor, and an important factor, that cannot be overlooked in determining valuation and in determining the fairness and feasibility of a plan of reorganization, but it is not the sole or necessarily the controlling factor in reaching a conclusion respecting the value of productive assets. In re Cleveland Discount Co., D.C., 9 F.2d 97; In re Gibson Hotels, Inc., D.C., 24 F.Supp. 859; In re Reb Holding Co., D.C., 35 F.Supp. 716. In the valuation of assets other than Cuban bonds, the master did not fall into error in arriving at the results, and his valuation of $4,448,707.19 will stand.

The more vital question related to the valuation of the Cuban bonds. The stockholders urge with much force that the par value of the bonds must control over the value as found by the master. When these proceedings were instituted, the debtor owned obligations of the Republic of Cuba which, with accumulated interest, amounted to over $15,000,000. Thereafter the debtor succeeded in effecting a settlement, which has been approved by the court, whereby the debtor received the sum of $8,702,900, paid by the delivery to it of $4,323,300 face value of 4½% bonds due 1977, and $4,-379,600 face value of 4½% bonds due 1955. Both issues are secured by pledged revenues, the security of the 1955's being junior to that of the 1977's. The master valued the 1977 bonds at 57 and the 1955's at 54.

■ It was shown at the hearing that the pledged revenues were adequate to service both issues, that they were not in default, that other issues of the Cuban Republic were selling at much higher prices and that the market for the 1977's was due somewhat to abnormal conditions. Nothing appeared in evidence upon which to ground a prophecy that the bonds would not be paid according to their terms. Some of these factors do not appear in the master's report but as the evidence was certified and submitted by the master with his report, recourse may be had to it to supply the omissions. These factors are essential in any determination of the proper criterion to apply in evaluating these obligations, unless it be held as a matter of law that, since they were bought and sold on the stock exchange, market quotations must govern. Any doubt respecting the ex-

istence or application of such a rule ought to be resolved in favor of the contention of the stockholders, for if market quotations are to prevail, there would be no equity for the common stockholders and, according to recent decisions, they would not be entitled to participate in any plan. Case et al. v. Los Angeles Lumber Products Co., Ltd., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110; Consolidated Rock Products Co. v. DuBois, supra.

The question is whether as matter of law the obligations of the Republic of Cuba should be valued at their going market price or at par.

■ Traditionally, courts and lawyers for many years regarded market price as the best, almost the conclusive, test of value. At times, where actual market prices were seen to be unreliable, hypothetical willing sellers and willing buyers have been conceived, and the supposed prices at which they would buy and sell have been called a "fair" market value. There is, however, a noticeable present tendency not to be bound by instant market prices, but to look into the future, to a proper extent, in appraising the value of property. Monongahela Nav. Company v. United States, 148 U.S. 312, 328, 13 S.Ct. 622, 37 L.Ed. 463; Galveston, H. & S. A. R. Co. v. Texas, 210 U.S. 217, 226, 28 S.Ct. 638, 52 L.Ed. 1031; Consolidated Rock Products Co. v. DuBois, supra; Dewing, Financial Policies of Corporations (3rd edition, 1934) 199; 2 Bonbright, The Valuation of Property, 870-881, 885.

This tendency should be especially applicable to valuations under Sec. 77B.

■ It is well settled that the words "fair value" need not mean liquidating value, nor need they be regarded in law as equivalent to present realizable value. Duncan v. Landis, 3 Cir., 106 F. 839, 858; In re Geiser Mfg. Co., D.C., 18 F.Supp. 506, 508; In re Gibson Hotels, Inc., D.C., 24 F.Supp. 859, 863. And especially is this true when we consider that the purpose of 77B is to enable corporations in financial difficulty to readjust their indebtedness and continue in business without a forced liquidation of their assets. In re Geiser Mfg. Co., supra; In re Reb Holding Co., D.C., 35 F.Supp. 716, 717.

In Finletter's "The Law of Bankruptcy Reorganization" are some pertinent observations.

He says:

"Valuations have never before been used as a means of determining legal rights in judicial reorganizations and there has been, therefore, no reason for the establishment by the courts of a legal theory on which they should be grounded." (556)

"A valuation for this purpose must therefore not be concerned with the immediate convertibility into cash of the assets. Its function is to find the worth of the properties for the purposes for which they are to be used by the debtor." (557)

"The basic principle of judicial appraisals is clear: The standard of the valuation must be the one which is best suited to the purpose for which it is made. An economic valuation based on capacity to earn * * * seems * * * to be entirely apt for the purpose of determining whether a class of creditors or stockholders should be included or excluded from a plan or arrangement. A valuation made for this purpose has no concern with liquidation values. By definition no liquidation is contemplated." (558)

"The decisions in ordinary bankruptcy cases are of little assistance as guides for valuations under the reorganization chapters of the Bankruptcy Act * * * in ordinary bankruptcy, liquidation and the reduction of assets to cash is the objective." (566)

"In any event the reorganization chapters of the bankruptcy Act require a new standard of value, that standard must be one which seeks to find the worth of the going concern at a given moment of its career. It must not be concerned with the liquidation but with the continuance of the enterprise as an income producing unit. The economic definition of the value of producing properties is therefore the only one which can be applicable. The capacity to earn in the future * * * is, therefore, it is believed, the proper basis for determining whether such a value exists as will give the right to stockholders and creditors to participate in the plan or arrangement." (574)

Cases have been cited by the Bondholders' Committee to the proposition that, in order to establish a right to participate, stockholders may not add to present fair value the potential value based on prospective increase in value or earning power. Utilities Power & Light Corp., D.C., 29 F.Supp. 763; Reading Hotel Corporation, D.C., 10 F.Supp. 470.

The proposition may be accepted as sound, but it is not decisive of the present issue. As the counsel for the stockholders have well said:

"The present value of a definite debt in a stated amount, evidenced by bonds and secured, as far as present facts and factors indicate, by ample revenues, where the holder of this debt does not at present plan to liquidate the debt, but plans to hold it to maturity, is the amount of the debt."

It may be conceded that in dealing with certain kinds and classes of property the words "fair value" connote fair market value, and in certain cases under certain conditions quotations on the stock exchange are the best index of value. There is a wide difference between corporate stock and a promise to pay a definite sum of money at a stated time in the future. The element of conjecture is involved, whether the prophecy is for or against performance by the Cuban Republic, and it would be unfair to the common stockholders to value the debtor's assets upon the assumption that Cuba will not meet its obligations.

It is significant that in every case cited by the bondholders the court was dealing with shares of stock in corporations or with tangible property, while in the only cases that have been brought to my attention which involve the valuation of bonds the courts held that they were properly valued at par. These cases are: Hutchinson v. Fidelity Inv. Ass'n, 4 Cir., 106 F. 2d 431; In re Cleveland Discount Co., supra.

The Cleveland Discount Co. case was clearly in point. An involuntary petition in bankruptcy was contested and the issue was whether the alleged bankrupt was solvent. In determining the fair value of its assets, bonds were included at par. Stock market quotations were rejected on the particular circumstances of the case. It was there noted that the bonds were not in default, were amply secured and that the market was limited and unduly depressed. Undoubtedly the Cuban bonds were more extensively dealt with on the stock exchange than the bonds involved in the Cleveland Discount Co. case. Other things being equal, this distinction alone would not, in my opinion, compel a conclusion different from that reached in the Cleveland Discount Co. case.

The stockholders argue that entirely aside from the normality or abnormality of the stock market in these bonds, as a

matter of law they should be valued at the amount of the debt in the absence of a clear present showing either that the bonds are in default or that they are inadequately secured and will not be paid. I think there is much to be said for this argument.

Hutchinson v. Fidelity Inv. Ass'n, supra, was a suit in equity, but the solvency of the defendant association was in issue. The master valued the bonds according to a formula prescribed by state officials rather than upon market values. The formula applied to bonds was as follows:

Bonds and debentures that are not now in default of their interest or principal and that have continued to pay interest should be valued at par.

The formula further provided that preferred and common stock should be valued at the market.

This formula was approved by the District Court, McCammon v. Fidelity Inv. Ass'n, 26 F.Supp. 117, and by the Circuit Court of Appeals for the Fourth Circuit. It will be noted that a distinction was made between the rule to govern valuation of bonds and the rule to apply in valuing stocks of corporations.

Stress is laid on the fact that in the Hutchinson case the bonds were acquired for long term investment. While the Warren Brothers Company received these Cuban bonds in settlement of its claim, I see nothing in the present situation which would require the debtor to throw these bonds upon an unfavorable market now or later. Nothing has appeared in these proceedings to warrant the court in indulging any such presumption.

No plan of reorganization has yet been submitted to the court. In passing, however, and without undertaking to anticipate the form or details of the plan, I will note that a plan requiring the forced liquidation of these Cuban bonds or a distribution among bondholders at less than par might be held to be unfair to the stockholders.

The objections relating to the failure of the master to value the Cuban bonds at par are sustained. All other objections are overruled. The master's report will be modified by adding to the master's valuation of the Cuban bonds the difference between that valuation and the par value, or $3,873,635, and, so modified, the report will be confirmed, resulting in a total valuation of debtor's property of $13,151,607.19.